IN THE MATTER OF: SHO'REICE DOMAINE BAKER, DOB: 10/29/89

No. COA02-729

(Filed 17 June 2003)

**Termination of Parental Rights— willfully leaving child in foster care—failure to make reasonable progress to correct conditions**

The trial court did not err by terminating the parental rights of respondent parents under N.C.G.S. § 7B-1111(a)(2) based on clear, cogent, and convincing evidence that respondents willfully left their child in foster care for more than twelve months and failed to make reasonable progress in correcting the conditions that led to the child's removal from the home, because: (1) although respondents agreed to attend parenting classes, they refused to find out about them and had not completed parenting classes at the time of the hearing on termination of parental rights; (2) respondents refused to sign a Department of Social Services family plan for reunification; (3) respondents refused to cooperate with individual therapy; (4) attendance at a one-day

workshop was not evidence of any real effort by respondent mother; and (5) respondent father did not show reasonable progress even though he completed an anger management class when the therapist who conducted the course observed that respondent had only a limited understanding of the concepts presented.

Appeal by respondents from order entered 19 November 2001 by Judge Jimmy L. Love, Jr. in Johnston County District Court. Heard in the Court of Appeals 12 March 2003.

*Stephanie L. Mitchiner for respondent-appellant Antonio Baker.*

*Terry F. Rose for respondent-appellant Michelle Baker.*

*Jennifer S. O'Connor for petitioner-appellee Johnston County Department of Social Services.*

*Murphy & Johnson, P.A., by James D. Johnson, Jr., for Guardian ad Litem.*

LEVINSON, Judge.

Petitioners (Johnston County Department of Social Services, hereafter DSS) initiated this action on 3 August 2001, by filing a petition to terminate the parental rights of respondents (Michelle Baker and Antonio Baker) in their son, Sho'Reice Baker (the juvenile). A hearing was conducted in October 2001, and on 20 November 2001, the trial court entered an order terminating the parental rights of both respondents. From this order respondents appeal. For the reasons discussed below, we affirm the trial court.

Preliminarily, we note that respondent father, Antonio Baker, failed to include his notice of appeal in the record. This Court does not acquire jurisdiction without proper notice of appeal. *Fenz v. Davis*, 128 N.C. App. 621, 623, 495 S.E.2d 748, 750 (1998). However, Mr. Baker filed a motion to amend the record to include written notice of appeal. We grant respondent's motion, and proceed to review the merits of respondents' appeal.

## Standard of Review

At the hearing on a petitioner's motion for termination of parental rights, the burden of proof "shall be upon the petitioner or movant to

prove the facts justifying such termination by clear and convincing evidence." N.C.G.S. § 7B-1111(b) (2001).

> Thus, in order to prevail in a termination of parental rights proceeding . . . the petitioner must: (1) allege and prove all facts and circumstances supporting the termination of the parent's rights; and (2) demonstrate that all proven facts and circumstances amount to clear, cogent, and convincing evidence that the termination of such rights is warranted.

*In re Pierce*, 356 N.C. 68, 70, 565 S.E.2d 81, 83 (2002). "A clear, cogent and convincing evidentiary standard is a higher standard than preponderance of the evidence, but not as stringent as the requirement of proof beyond a reasonable doubt." *In re Hardesty*, 150 N.C. App. 380, 385, 563 S.E.2d 79, 83 (2002).

A proceeding for termination of parental rights requires the trial court to conduct a two part inquiry. N.C.G.S. § 7B-1109(e) (2001) directs that the court first "shall take evidence, find the facts, and shall adjudicate the existence or nonexistence of any of the circumstances set forth in G.S. [§] 7B-1111 which authorize the termination of parental rights of the respondent." Disposition is governed by N.C.G.S. § 7B-1110 (2001), which provides in relevant part that upon a finding "that any one or more of the conditions authorizing a termination of the parental rights of a parent exist, the court shall issue an order terminating the parental rights of such parent . . . unless the court shall further determine that the best interests of the juvenile require that the parental rights of the parent not be terminated." N.C.G.S. § 7B-1111(a) (2001).

On appeal, "[o]ur standard of review for the termination of parental rights is whether the court's 'findings of fact are based upon clear, cogent and convincing evidence' and whether the 'findings support the conclusions of law.'" *In re Pope*, 144 N.C. App. 32, 40, 547 S.E.2d 153, 158 (quoting *In re Huff*, 140 N.C. App. 288, 292, 536 S.E.2d 838, 840 (2000), *disc. review denied*, 353 N.C. 374, 547 S.E.2d 9 (2001)), *aff'd*, 354 N.C. 359, 554 S.E.2d 644 (2001).

---

With regards to each respondent, the trial court found that the following ground for termination of parental rights existed:

> The parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the

IN RE BAKER

[158 N.C. App. 491 (2003)]

circumstances has been made in correcting those conditions which led to the removal of the juvenile.

N.C.G.S. § 7B-1111(a)(2) (2001). Respondents have each argued on appeal that this finding was not supported by clear, cogent, and convincing evidence. However, respondents failed to assign this issue in their assignments of error, in violation of N.C.R. App. P. 10(a) ("scope of review on appeal is confined to a consideration of those assignments of error set out in the record on appeal in accordance with this Rule 10"). Nonetheless, in the interests of justice, and pursuant to our authority under N.C.R. App. P. 2, we elect to review the merits of respondents' argument.

In the case *sub judice*, it is undisputed that the juvenile was in foster care for more than twelve months prior to the filing of the petition. However, to sustain the trial court's finding that grounds existed for termination of parental rights under G.S. § 7B-1111(a)(2), we must also determine that there was clear, cogent, and convincing evidence that (1) respondents "willfully" left the juvenile in foster care for more than twelve months, and (2) that each respondent had failed to make "reasonable progress" in correcting the conditions that led to the juvenile's removal from the home. *In re Bishop*, 92 N.C. App. 662, 667, 375 S.E.2d 676, 680 (1989).

A parent's "willfulness" in leaving a child in foster care may be established by evidence that the parents possessed the *ability* to make reasonable progress, but were *unwilling* to make an effort. *See, e.g., In re McMillon*, 143 N.C. App. 402, 410, 546 S.E.2d 169, 175 (2001) (holding willful refusal to make progress demonstrated where "tasks assigned to [respondent] were within her ability to achieve, and did not require financial or social resources beyond her means"); *In re Nolen*, 117 N.C. App. 693, 453 S.E.2d 220 (1995) (holding respondent's refusal to seek treatment for alcoholism constituted willful failure to correct conditions that had led to removal of child from home).

Regarding the requirement that for *at least twelve months* the respondents failed to make reasonable progress in addressing the problems underlying their child's removal from the home, the North Carolina Supreme Court recently held:

The legislature specifically delineated that the "reasonable progress" evidentiary standard be measured in a twelve-month increment, and in our view, the *twelve-month standard* envisioned by lawmakers *was "within 12 months" from the time*

*the petition* for termination of parental rights *is filed* with the trial court.

*In re Pierce*, 356 N.C. at 75, 565 S.E.2d at 86 (emphasis added). In the instant case, the petition for termination of parental rights was filed 2 August 2001, so our focus is on respondents' progress during the year preceding that date.

The record indicates that petitioners had "an extensive history with [respondents,]" and that DSS had "investigated 16 reports on [respondents]" between 1990 and the date of the hearing. In 1992, two reports of improper discipline of the juvenile's sister were substantiated, and a petition was filed. Testimony from a DSS social worker indicated that both respondents were "perpetrators" of the improper discipline substantiated in 1992. After the petition was filed in 1992, Ms. Baker attended parenting classes. In 1996, two more reports of improper discipline of the juvenile's sister were substantiated, and another petition was filed against Ms. Baker. In 1997, DSS substantiated a report of sexual abuse of the juvenile's sister by Mr. Baker, and the girl was placed in DSS custody. The remaining investigations were unsubstantiated.

On 7 March 2000, DSS investigated a report that the juvenile, then ten years old, had "marks and bruises on his arms, back, and legs." Melissa Cloer, a DSS social worker, examined the juvenile at school and found "linear belt marks [on] the inside of his forearm[,] . . . linear marks on his back and on the front of his left thigh." Later that day, Cloer went to respondents' home to discuss the situation. When confronted about the marks on her son, Ms. Baker began yelling at the juvenile that it was "his fault" that DSS was at the house, because "he had gone to school and run his mouth." She stated that Mr. Baker had spanked the juvenile with a belt because he had lied to his parents "about tearing up his underwear." When Mr. Baker arrived home, he admitted to spanking the juvenile for "tearing up his underwear." Meanwhile, Ms. Baker continued to shout that she would not cooperate with DSS. That evening, Cloer removed the juvenile from his home "because he had marks and bruises on him, the family had a history of improper discipline, we'd offered services[, but] the mother stated that she was going to continue to spank him and was not going to comply with [DSS] and [at] that time we could not ensure his safety. . . ."

The following day, respondents met with Cloer, who discussed with them the steps they would have to take to regain custody of the

**IN RE BAKER**

[158 N.C. App. 491 (2003)]

juvenile. Although respondents agreed to attend parenting classes, they refused to "call around and find out about them," and at the time of the hearing on termination of parental rights, respondents had not completed parenting classes. Respondents also refused to sign a DSS family plan for reunification. In April, 2000, respondents did attend a one-day workshop on child discipline. However, respondents "both refused to go to any type of services offered by Johnston County Mental Health," either to be evaluated, to obtain individual counseling, or to complete a Child Abuse Potential Inventory. Their refusal to cooperate with individual therapy is particularly significant given Cloer's testimony that, although respondents had previously attended group classes on parenting and discipline, "bruises are continuing to be left on the children. . . ."

Ms. Baker has argued that she demonstrated reasonable progress towards addressing the issues underlying the juvenile's placement in foster care. We disagree. Attendance at a one-day workshop was not evidence of any real effort on the respondent's part. Moreover, Ms. Baker invalidated the results of the only diagnostic test she completed by failing to give truthful answers; she steadfastly refused to participate in counseling; and she would not agree to change her methods of disciplining the juvenile. We also reject Ms. Baker's argument that her improper discipline of the juvenile is mitigated by the subsequent diagnosis that the juvenile may be suffering from obsessive compulsive disorder. Respondent's discipline was improper because it involved whipping the juvenile with a belt, to the extent that marks and bruises resulted, not because she lacked a complete understanding of his problems.

Mr. Baker also argues that he showed "reasonable progress" in his case because he completed an anger management class. However, the therapist who conducted the course observed that Mr. Baker had "only a limited understanding of the concepts presented." This is corroborated by the following testimony from Mr. Baker:

Q. And what are those [documents]?

A. Dealing with the anger management classes, *how you're supposed to whip your children* and how you're supposed to discipline them. How you're supposed to—when you're angry and *supposed to whip them when you're mad.* And I got some true and false questions up here.

(emphasis added).

**IN RE BAKER**

[158 N.C. App. 491 (2003)]

"Extremely limited progress is not reasonable progress." *Nolen*, 117 N.C. App. at 700, 453 S.E.2d at 224-25; *see also In re Fletcher*, 148 N.C. App. 228, 235-36, 558 S.E.2d 498, 502 (2002) (upholding termination of parental rights order where "[al]though the respondent mother made some efforts, the evidence supports the trial court's determination that she did not make sufficient progress in correcting conditions that led to the child's removal"); *Bishop*, 92 N.C. App. at 670, 375 S.E.2d at 681 (holding trial court's finding was supported by clear, cogent, and convincing evidence where "although respondent has made some progress in the areas of job and parenting skills, such progress has been extremely limited").

The record evidence amply supports the trial court's finding that respondents "willfully left the juvenile in foster care . . . for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile[.]" Respondents have also challenged the trial court's finding that they neglected the juvenile. However, "[i]n light of our holding that the trial court did not err in finding that grounds exist to terminate respondent[s'] parental rights under [N.C.G.S. § 7B-1111(a)(2)], we need not discuss the remaining . . . grounds for termination asserted by petitioner." *In re Brim*, 139 N.C. App. 733, 743, 535 S.E.2d 367, 373 (2000). Moreover, respondents have not challenged the trial court's determination that it was in the child's best interests for their parental rights to be terminated. We conclude the trial court properly found the existence of a statutory ground for termination of parental rights.

Affirmed.

Judges WYNN and TIMMONS-GOODSON concur.