STEELMAN, Judge.
The juvenile, K.L.J. was born in April of 1997 to respondent-mother. Respondent-father, father of the juvenile, was incarcerated in October of 1996 and has remained incarcerated during the entire lifetime of the child. K.L.J. and his siblings lived with respondent-mother until their removal by the Forsyth County Department of Social Services on 24 October 2000.
Department of Social Services filed a juvenile petition alleging K.L.J. to be a neglected juvenile on 24 October 2000. The Department of Social Services was also granted non-secure custodyof the child and his siblings on that same day. On 15 December 2000, K.L.J. and his siblings were adjudicated to be neglected juveniles. Respondent-mother admitted the facts which were alleged in the juvenile petition of 24 October 2000, which contained the following: The Department of Social Services has twice investigated and substantiated respondent-mother for neglect involving unsanitary and hazardous conditions of the home and the children; Department of Social Services has offered numerous services to respondent-mother, including but not limited to WISH, In-Home Aide, SCAN, Day care, Family Preservation, and B.A.B.I.E.S. program; respondent-mother has failed SCAN on two occasions because she would not attend and respond to home visits and or referrals; respondent-mother is low functioning but has proved in the past that when Department of Social Services is involved, she can keep her home minimally clean; respondent-mother has a history of not meeting minimal care if Department of Social Services is not involved; respondent-mother has admitted on several occasions to abusing marijuana and tested positive for drugs on 13 March 2000;
On 20 October 2000 Department of Social Services Petitioner, Robin Weaver, found the home to be very filthy with trash all over the home, no sheets on the beds or pillows which were extremely filthy and a child's bed with dried human feces on it; respondent-mother could not tell Ms. Weaver how long it had been there or which of her children had slept in that bed the previous night.
As its disposition plan, the trial court ordered that K.L.J. and his siblings remain in foster care while respondent-mothercompleted the orders of the trial court. The trial court ordered that if respondent-mother desired reunification that she was to accomplish the following: keep appointment with Centerpoint, on 18 December 2000 for a psychological evaluation, and comply with all recommendations of that evaluation; comply with all recommendations of WISH to address her substance abuse issues; attend supervised visits with her children as scheduled; pay child support in the amount of $50.00 per month; surrender all Social Security benefits received for K.L.J. and his sibling; attend school meetings for the children; attend surgical appointments for K.L.J.'s sibling; cooperate with agencies providing services to herself or her children; and receive education as to family planning and birth control. Respondent-mother was additionally ordered to cooperate with a Carolina One Source evaluation and follow all recommendations of such assessment.
The trial court also ordered that if respondent-father wished the court to consider reunification of K.L.J. with him that he was to accomplish the following: complete and sign a case plan with Department of Social Services and comply with its recommendations; submit to paternity testing; pay $50.00 per month in child support for K.L.J. upon his being eligible for work release; and attend supervised visits with K.L.J. On 21 March 2001, the trial court conducted its first periodic review of this case. Among other things, the court found that respondent-mother did not keep her 18 December 2000 appointment for her psychological evaluation at Centerpoint. A makeup appointment was kept; however, respondent-mother was not taking her anxiety medication as prescribed; respondent-mother had made only preliminary steps in addressing her substance abuse issues by attending a substance abuse assessment, enrolling in but failing to attend the STEP one intensive out patient program, completing the ARCA 14 day Detox and In-patient treatment program, and enrolling in the Hosanna House half-way house but not completing that program; respondent-mother attended 9 of 16 possible visits with her children, and she was late to 3 of the visits; she paid no child support; she attended an appointment at K.L.J.'s school; she worked for 1 week at Burger King and in a school cafeteria for 1 week. The court noted that respondent-father had two visits with K.L.J. at the prison facility and had paid no child support for his son despite having a prison job. At the 21 March 2001 permanency planning hearing the permanent plan for K.L.J. and his siblings was changed to Adoption.
On 21 September 2001 The trial court conducted another periodic review and permanency planning hearing. At this hearing, the court found: respondent-mother has not addressed her substance abuse or parenting issues, obtained or maintained gainful employment, or paid child support. Additionally the Court found that respondent-mother had attended only one of 24 possible visitation opportunities and had failed to submit to court ordered urinalysis testing. The court found that respondent-father had continued to visit with K.L.J. monthly when the Department of Social Services social worker brought the child to his prison unit. He had paid no child support out of his earnings at his prisonfactory job, but he gave K.L.J. a birthday card on his birthday and a $5.00 gift. Because he was not able to identify any appropriate individual to care for his child until his release from prison, respondent-father told the social worker that he wanted his child to continue in the care of Department of Social Services until his release from prison in 2006. The trial court relieved Department of Social Services of its requirement to make reunification efforts with respondent-mother and respondent-father and again adopted the permanent plan of Adoption.
Department of Social Services filed a Petition to Terminate the parental rights of respondent-mother and respondent-father on 28 November 2001. On 15, 16 and 18 April 2002, Judge Menefee conducted a hearing on this petition. Judge Menefee found that respondent-mother had neglected her children, including K.L.J., pursuant to N.C.G.S. 7B-1111(a)(1); that respondent-mother had willfully left her children for at least one year in foster care without making reasonable progress in addressing the issues which resulted in the children's removal from her care (N.C. Gen. Stat. § 7B-1111(a)(2)); that respondent-mother had willfully failed to pay child support as ordered for the care and maintenance of her children although able to do so (N.C. Gen. Stat. § 7B-1111(a)(3)); and that both she and respondent-father had willfully abandoned K.L.J. pursuant to N.C.G.S. 7B-1111(a)(7). Judge Menefee further found that termination of the parental rights of respondent-mother and respondent-father was in K.L.J.'s best interest. From JudgeMenefee's orders terminating their parental rights to K.L.J. respondents each appeal.
Respondent-Mother's Appeal
In her first assignment of error, respondent-mother argues that the trial court committed reversible error because it failed to comply with the requirements of N.C. Gen. Stat. § 7B-1109(e) and § 7B-1110(a) in that it did not enter its written order terminating her parental rights within the statutorily mandated time period of 30 days. We disagree.
N.C. Gen. Stat. § 7B-1110(a) states that: "Any order shall be reduced to writing, signed, and entered no later than 30 days following the completion of the termination of parental rights hearing." In this matter, the hearing was conducted on 15, 16 and 18 April 2002. An order terminating the parental rights of respondents was entered on 29 January 2003. A second order was entered on 8 July 2003, and an amended order was entered on 28 July 2003. Respondents appeal from the 28 July 2003 order.
This court has already held that failure to enter the trial court's written order terminating parental rights within a 30 day period does not automatically require us to vacate the order, stating that "we find no authority compelling that the TPR order be vacated as a result." In re J.L.K., __ N.C. App. __, 598 S.E.2d 387 (2004). This Court in J.L.K. further held that since respondent had failed to demonstrate that he suffered any prejudice by the trial court's delay, vacating the order was not the appropriate remedy. Id. In the instant case, the trial judge stated at thetermination hearing the grounds for termination, and that they had been proven by clear cogent and convincing evidence. Respondent-mother does not make any argument that the delay in the entry of the written order prejudiced her other than that it delayed her appeal. While the record reveals no explanation or justification for the excessive delay in the entry of the order in this case, we do not find that respondent-mother suffered prejudice that would warrant reversal of the trial court's order. We believe the best interests of the child in the instant case are served by determining whether the trial court properly found grounds for termination and exercised proper discretion in its order. This argument is without merit.
We are cognizant of the limited clerical and staff resources provided to our trial judges in North Carolina. This often results in judges having to rely upon counsel to prepare orders for the court. However, the ultimate responsibility for the entry of the order rests with the trial judge. If counsel is dilatory in preparing orders as directed by the court, the judge has many tools at his or her disposal with which to compel counsel to deliver the order. The trial courts should make every effort to enter termination of parental rights orders within 30 days of the end of the hearing as required by the statutes.
In her second and third arguments respondent-mother contends that certain findings of fact should not have been included in the trial court's order. We make no determination as to the merit of this argument, because there are sufficient uncontested findings offact to allow us to determine whether the trial court properly terminated respondent-mother's parental rights, and it is unnecessary for us to consider the findings of fact contested in these arguments.
In her fifth and seventh arguments, respondent-mother contends that the trial court erred in terminating her parental rights based upon a finding that she had willfully left the juvenile in foster care for a period of more than one year without showing reasonable progress towards reunification (N.C. Gen. Stat. § 7B-1111(a)(2)). We disagree.
"[I]n order to prevail in a termination of parental rights proceeding . . . the petitioner must: (1) allege and prove all facts and circumstances supporting the termination of the parent's rights; and (2) demonstrate that all proven facts and circumstances amount to clear, cogent, and convincing evidence that the termination of such rights is warranted." In re Baker, 158 N.C. App. 491, 493, 581 S.E.2d 144, 145 (2003).
A proceeding for termination of parental rights requires the trial court to conduct a two part inquiry. N.C.G.S. § 7B-1109(e) (2001) directs that the court first "shall take evidence, find the facts, and shall adjudicate the existence or nonexistence of any of the circumstances set forth in G.S. [§] 7B-1111 which authorize the termination of parental rights of the respondent." Disposition is governed by N.C.G.S. § 7B-1110 (2001), which provides in relevant part that upon a finding "that any one or more of the conditions authorizing a termination of the parental rights of a parent exist, the court shall issue an order terminating the parental rights of such parent . . . unless the court shall further determine that the best interests of the juvenile require that the parental rightsof the parent not be terminated." N.C.G.S. § 7B-1111(a)(2001).
Baker, 158 N.C. App. at 493, 581 S.E.2d at 146. "Our standard of review for the termination of parental rights is whether the court's 'findings of fact are based upon clear, cogent and convincing evidence and whether the findings support the conclusions of law.'" In re Pope, 144 N.C. App. 32, 40, 547 S.E.2d 153, 158 (2001)(citations omitted). "So long as the findings of fact support a conclusion based on [the relevant statute], the order terminating parental rights must be affirmed." In re Oghenekevebe, 123 N.C. App. 434, 436, 473 S.E.2d 393, 396 (1996)(citation omitted).
Respondent-mother does not dispute that K.L.J. has been in the custody of social services for over one year. However, under N.C. Gen. Stat. § 7B-1111(a)(2) "we must also determine that there was clear, cogent, and convincing evidence that (1) [respondent] 'willfully' left the juvenile in foster care for more than twelve months, and (2) that . . . respondent had failed to make 'reasonable progress' in correcting the conditions that led to the juvenile's removal from the home." Baker, 158 N.C. App. at 494, 581 S.E.2d at 146. "A parent's 'willfulness' in leaving a child in foster care may be established by evidence that the parents possessed the ability to make reasonable progress, but were unwilling to make an effort." Id. The relevant twelve month period is that immediately prior to the filing of the petition to terminate respondent's parental rights. Id. In the instant case,the petition was filed on 28 November 2001, thus the relevant twelve month period runs from 28 November 2000 to that date.
In uncontested findings of fact, the trial court found as follows concerning the relevant time period: respondent-mother failed to pay any child support, even though she was briefly employed in the relevant period, was capable of work, and lived with her mother; though she was authorized weekly visitation with K.L.J., she only visited K.L.J. 7 times out of 49 authorized visits, even though she lived only a few miles away and near a bus route, and the Department of Social Services provided her with bus passes; in that same period she visited respondent-father regularly once a month even though he was incarcerated about 60 miles away; although Forsyth Department of Social Services provided respondent-mother with "virtually all services available to her through the agency," including WISH, SCAN, Family Preservation, B.A.B.I.E.S., in-home aide assistance, and daycare, she failed to follow through with any of these directives, including missing numerous appointments with Step One, and poor participation in the B.A.B.I.E.S. and WISH programs; respondent-mother was also to have completed a psychological evaluation at Centerpoint and comply with all recommendations of the WISH program to address her substance abuse problems, attend supervised visits with the children, demonstrate appropriate parenting skills, address vocational and employment issues, and cooperate with Carolina One Source Evaluation and follow all recommendations; respondent-mother failed to follow through with these directives as well, includingcontinuing her use of marijuana, failing to seek and keep gainful employment even though she could offer no reasons for her inability to do so, refusal to take her antidepressant medication despite being directed to do so, and scant visitation with K.L.J.
Because these findings of fact are uncontested, they are binding on appeal. In re Beasley, 147 N.C. App. 399, 405, 555 S.E.2d 643, 647 (2001). We hold that these uncontested findings of fact provide ample support for the trial court's conclusion of law that grounds existed under N.C. Gen. Stat. § 7B-1111(a)(2) supporting termination of respondent-mother's parental rights. It is clear that respondent-mother possessed the ability to make reasonable progress, but was unwilling to make the effort. Baker, 158 N.C. App. at 494, 581 S.E.2d at 146. This argument is without merit.
In respondent-mother's eighth argument she contends that the trial court erred in determining that termination of her parental rights was in the best interest of the child because "the trial court was clearly predisposed to determine" that the juvenile's best interests would be served thereby. We disagree.
Once the trial court determines at the adjudication stage that grounds exist to support termination, the decision to terminate at disposition is within the trial court's discretion. In re Parker, 90 N.C. App. 423, 430, 368 S.E.2d 879, 884 (1988). Respondent-mother argues that Judge Menefee was predisposed to find that it was in K.L.J.'s best interests to terminate her parental rights, and thus the trial court abused its discretion in so finding. Respondent-mother's sole support for her argument is that Judge Menefee stated in court after the adjudication stage but before the disposition stage of the proceeding that "I am going to find that it is in the best interest of the minor child to terminate the parental rights." Though this pronouncement was erroneous at this stage of the proceeding, it is clear from the transcript that this was merely a lapsus linguae. Immediately following this statement, before any of the attorneys present objected, Judge Menefee stated: "No, I mean, I'm going to find that grounds exist to terminate the parental rights of the minor [child]." Respondent-mother points to no other evidence in the record to support her contention that the trial court was predisposed to find that termination would be in the best interests of the child, and our review of the record reveals none. This argument is without merit.
Because we have determined that respondent-mother's parental rights were properly terminated pursuant to N.C. Gen. Stat. § 7B-1111(a)(2), we need not consider respondent-mother's arguments related to the other grounds for termination. Yocum, 158 N.C. App. at 204, 580 S.E.2d at 404.
Respondent-Father's Appeal
In respondent-father's third argument, he contends inter alia that the trial court erred in concluding that there are grounds to terminate respondent-father's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(7) (2003). We agree.
The trial court based its decision to terminate respondent-father's parental rights solely on its conclusion that respondent-father had violated the provisions of N.C. Gen. Stat. § 7B-1111(a)(7). N.C. Gen. Stat. § 7B-1111(a)(7) states that parental rights may be terminated where: "The parent has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition or motion . . .."
"Abandonment imports any wilful or intentional conduct on the part of the parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child . . . ." "Abandonment has also been defined as wilful neglect and refusal to perform the natural and legal obligations of parental care and support. It has been held that if a parent withholds his presence, his love, his care, the opportunity to display filial affection, and wilfully neglects to lend support and maintenance, such parent relinquishes all parental claims and abandons the child . . .." Further, "abandonment requires a wilful intent to escape parental responsibility and conduct in effectuation of such intent." In this context, "the word ' willful' encompasses more than an intention to do a thing; there must also be purpose and deliberation."
Bost v. Van Nortwick, 117 N.C. App. 1, 18, 449 S.E.2d 911, 921 (1994)(internal citations omitted). The findings of fact supporting a conclusion that respondent-father has willfully abandoned K.L.J. must be proven by clear, cogent and convincing evidence. The standard of review in termination of parental rights cases is whether the findings of fact are supported by clear, cogent and convincing evidence and whether these findings, in turn, support the conclusions of law. In re Shepard, 162 N.C. App. 215, 221, 591 S.E.2d 1, 6 (2004).
Though respondent-father has been incarcerated for most of K.L.J.'s young life, "[i]ncarceration, standing alone, is neithera sword nor a shield in a termination of parental rights decision." In re Yocum, 158 N.C. App. 198, 207-08, 580 S.E.2d 399, 405 (2003). Thus, a showing of incarceration alone is insufficient to prove willful abandonment. In re Blackburn, 142 N.C. App. 607, 612, 543 S.E.2d 906, 909 (2001)(citing In re Adoption of Maynor, 38 N.C. App. 724, 726-27, 248 S.E. 2d 875, 877 (1978)).
The trial court found that grounds existed to terminate respondent-father's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(7) because he:
wilfully abandoned the juvenile for at least six consecutive months preceding the filing of the Petition. The Court specifically finds that the respondent-father had income, means, and ability to write on a more regular basis and that three letters and six cards is not sufficient in the Court's mind to have provided the type of conduct that the court considers appropriate under the circumstances.
In the case of In re Shermer, 156 N.C. App. 281, 576 S.E.2d 403 (2003), this Court considered the termination of the parental rights of an incarcerated father, based upon willful abandonment under N.C. Gen. Stat. § 7B-1111(a)(7). "Because respondent was incarcerated, there was little involvement he could have beyond what he did-write letters to [his children] and inform DSS that he did not want his rights terminated." Id. at 409, 576 S.E.2d at 409. This court in Shermer reversed the termination of parental rights as to the respondent-father, holding that the order did not contain sufficient findings to support the trial court's conclusion of willful abandonment. In the instant case, during the relevant six month period immediately prior to the filing of the petition (28 May 2001 to 28 November 2001), the court found that respondent-father wrote K.L.J. three times, one time including $2.00 (in respondent-father's other correspondence, outside the relevant six month period, he wrote three additional times, included a total of $10.00 additional, and sent his son a hand made wallet). The trial court also found as facts the following: respondent-father requested the court to appoint an attorney to represent him in this matter; through his attorney, respondent-father filed a response to the petition for termination, denying the material allegations therein; respondent-father was present in court for periodic reviews on 21 March 2001 and 21 September 2001, as well as at the termination hearing that concluded on 18 April 2002; respondent-father had regular, monthly, two hour visits with K.L.J. at the prison, and that on these visits respondent-father acted appropriately with his son; that on the December 2001 visit respondent-father acted "very emotional," because he had just been informed that a termination petition was pending; that respondent-father testified that he had completed 22 hours of parenting classes, that his visits with his son went "extremely well," and that he loved his son very much; that respondent-father provided a list of names of potential guardians of K.L.J. pending his release from prison, though none were found suitable.
In this case, the contacts of the respondent-father with the child during the relevant six month period are far more extensivethan those recited in Shermer. In addition, the respondent-father attended classes and actively attempted to find potential guardians for the child while he was in prison. These findings do not support the trial court's conclusion that respondent-father willfully abandoned K.L.J.
It appears that the trial court made the number of letters sent by respondent-father to K.L.J. the sole determinative factor on the issue of willful abandonment. In light of the other findings by the trial court, this finding alone is not sufficient to support a determination that respondent-father willfully abandoned K.L.J.
We further note that the trial court specifically found no willfulness on the part of respondent-father supporting termination under N.C. Gen. Stat. § 7B-1111(a)(2)(willfully leaving juvenile in foster care for 12 months), and further found that in light of respondent-father's limited opportunities for employment in jail, that no grounds existed to support termination under N.C. Gen. Stat. § 7B-1111(a)(3)(willfully failing to pay a reasonable portion of the costs of care for juvenile in custody of Social Services).
We hold that the trial court's findings of fact do not support its conclusion that respondent-father willfully abandoned K.L.J., and reverse the portion of the trial court's order so holding. In light of this ruling, we do not address respondent-father's remaining assignments of error.
AFFIRMED IN PART, REVERSED IN PART.
Chief Judge MARTIN and Judge MCCULLOUGH concur.
Report per Rule 30(e).