IN THE MATTER OF: C.J.G.S. M.M.J.S.
No. COA07-586
Court of Appeals of North Carolina.
Filed November 20, 2007
This case not for publication
Deane, Williams & Deane, by Jason T. Deane, for petitioner-appellee Department of Social Services.
Jon W. Myers, for respondent-appellant.
CALABRIA, Judge.
Respondent appeals from orders terminating her parental rights to two children, C.J.G.S. and M.M.J.S., on the grounds of neglect. We affirm.
In January 2002, the Richmond County Department of Social Services ("DSS") became involved after receiving reports of unsanitary conditions in respondent's home. Social workers from DSS visited respondent's home at least nine times in 2002 and 2003. During the home visits, DSS evaluated the home and provided guidance on maintaining a suitable living environment for the children since the children were not clean. DSS found unsanitary conditions in the house that included animal feces throughout the house from a variety of pets kept by respondent, dirty dishes piledup on the counter and in the sink, food left out from the previous night on the table, and garbage accumulated on the floor. In addition to unsanitary conditions, there were issues with lack of supervision and care of the children. Specifically, DSS received reports from C.J.G.S.'s school that he came to school with hygiene problems. Although respondent made some progress, conditions always reverted to the unsanitary conditions that led to the involvement of DSS. DSS filed a juvenile petition in December 2003, alleging both children to be neglected due to living in an environment injurious to their health. On 2 December 2003 the children were placed in non-secure custody, and respondent stipulated to neglect. On 13 January 2004, the trial court's order adjudicated the children as neglected.
Respondent and her husband (not the children's biological father) entered into a family services case plan that listed twelve items for improvement, including maintaining a clean and hazard-free home and making sure the children were dressed in clean clothes and groomed every day. Since respondent made some improvements and began to follow the case plan, in February 2004, the children were placed back in the home on a trial basis. In April 2004 respondent was arrested for a probation violation and was incarcerated in South Carolina for several months. Respondent's husband contacted DSS and told the agency he was unable to provide proper care and supervision for the children, and on 5 May 2004 the trial court ordered DSS to place the children in foster care. The children remained in foster care. During the June and August 2004 review periods, reunification remained the permanent plan despite the fact that respondent was incarcerated in South Carolina and was not released until sometime late in 2004.
Over the course of several review periods from December 2004 through November 2005, respondent improved the conditions in the home, but was unable to consistently comply with the family services case plan. Some of the recurring issues included keeping pets in the home after DSS asked respondent to keep them out of the home, and keeping the house clean and free of garbage. After visiting with respondent, the children would return to their respective foster homes with numerous flea and insect bites. In addition, they were hungry and dirty, and exhibited cigarette burns on their skin. C.J.G.S. was bitten by a dog and received medical attention. In the court's November 2005 order, the trial court warned respondent she had one last chance to make the necessary efforts and improvements to provide a "safe, fit, and sanitary environment for the minor children."
In the trial court's next order, entered 31 January 2006, the court noted improvements in the cleanliness of respondent's home, but the presence and appropriate care of the pets remained an area of concern. The court also noted DSS's request that "the parents demonstrate a long-term commitment before the minor children return to their custody." The court found it "likely" that the children would be returned to respondent within six months. The court increased visitation to weekly in-home visits and reiterated the requirement that respondent comply with the family services case plan and maintain a suitable living environment for the children.
At the next review hearing, respondent notified the court that she had separated from her husband and was moving to a new house. An unannounced home visit from DSS revealed respondent's house was not clean and was in disarray. The trial court found that respondent was likely to be reunited with the children "if she fully complies with her Family Services Case Plan for Reunification." The court stated that respondent needed to "show significant progress to [the court] in completing her activities and objectives."
At a hearing on 11 April 2006, the trial court found respondent had not made significant progress addressing the cleanliness and safety of the home. After citing respondent's regression to unsanitary conditions in her home and instability regarding her relationships, the trial court terminated respondent's visitation and allowed DSS to cease reunification efforts. DSS filed a petition on 22 June 2006 seeking to terminate respondent's parental rights on the grounds of neglect, willfully leaving the children in foster care for more than twelve months without showing reasonable progress, and willfully failing to pay a reasonable portion of the costs of care for the children while they were in foster care. Hearings were held on 21 and 28 November 2006. The trial court found grounds, concluded termination was in the best interests of the children, and terminated respondent's parental rights to both children. Respondent appeals. On appeal, respondent raises three issues: (i) the trial court erred in terminating parental rights based upon neglect; (ii) the trial court erred in terminating parental rights based upon failure to make reasonable progress while leaving the children in foster care for more than twelve months; and (iii) the trial court abused its discretion in finding that the best interests of the children would be served by terminating parental rights.
Respondent argues the trial court erred in terminating her parental rights on the basis the findings of fact are not supported by the evidence and the conclusions of law are not supported by the findings of fact. Respondent contends the trial court impermissibly shifted the burden of proof to her by refusing to acknowledge respondent's changed circumstances at the time of the termination hearings. Respondent testified that her husband was the source of the unsanitary conditions and he was the reason she was unable to maintain a suitable living environment for the children. The couple separated in January 2006, and respondent testified that once she moved to a new house, she maintained safe and sanitary conditions suitable for her children. We reject respondent's arguments and uphold the trial court's decision to terminate respondent's parental rights.
Proceedings in termination of parental rights cases are divided into two parts: (1) the adjudication phase, governed by N.C. Gen. Stat. § 7B-1109 (2006) and (2) the disposition phase, governed by N.C. Gen. Stat. § 7B-1110 (2006). In re Baker, 158 N.C. App. 491, 581 S.E.2d 144 (2003). "'The standard of review intermination of parental rights cases is whether the findings of fact are supported by clear, cogent and convincing evidence and whether these findings, in turn, support the conclusions of law.'" In re Shepard, 162 N.C. App. 215, 221, 591 S.E.2d 1, 6 (2004) (quoting In re Clark, 72 N.C. App. 118, 124, 323 S.E.2d 754, 758 (1984)). Findings of fact supported by competent evidence are binding on appeal even though there may be evidence to the contrary. In re Williamson, 91 N.C. App. 668, 674, 373 S.E.2d 317, 320 (1988). An order terminating parental rights will be upheld if one or more grounds for termination is found. N.C. Gen. Stat. § 7B-1110(a) (2006). Once a trial court has determined that at least one ground exists, the trial court then decides whether termination of parental rights is in the best interests of the child. In re Blackburn, 142 N.C. App. 607, 610, 543 S.E.2d 906, 908 (2001).
A trial court may terminate parental rights based on neglect "if the court finds the juvenile to be . . . a neglected juvenile within the meaning of G.S. 7B-101." N.C. Gen. Stat. § 7B-1111(a)(1) (2006). A "neglected juvenile" is "[a] juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of [the] law." N.C. Gen. Stat. § 7B-101(15) (2006). A prior order adjudicating neglect is admissible evidence to show past neglect. In re Ballard, 311 N.C.708, 713-14, 319 S.E.2d 227, 231 (1984). However, termination of parental rights may not be determined solely on a finding of past neglect. Id., 311 N.C. at 714, 319 S.E.2d at 231. A trial court must find either that neglect exists at the time of the termination hearing or that there is a reasonable likelihood of repetition of neglect if the children were returned to the parents. Id.; see also In re Reyes, 136 N.C. App. 812, 526 S.E.2d 499 (2000). This is especially true when a respondent has not had custody of the child for quite some time. Ballard, 311 N.C. at 714, 319 S.E.2d at 231.
Although the prior adjudication in this case established the existence of prior neglect, DSS had the burden to show that a reasonable probability existed that the neglect would most likely be repeated if the children returned to their mother's home. Evidence and testimony highlighted respondent's lack of progress toward maintaining a clean and safe home over a four-year period. DSS gave respondent numerous opportunities to improve the cleanliness of her home even before filing the juvenile petitions at the end of 2003. Respondent exhibited a pattern of making minimal improvements, only to repeat the same habits that led to the involvement of DSS. Once the trial court became involved, respondent entered into a series of family services case plans over a two-year period, all with the same goal of maintaining a clean and safe home for the children, and addressing the needs of the children. Respondent was given specific goals to keep the house clean, and was warned numerous times about the problems associated with keeping animals in the house. Social workers from DSS helped respondent clean her house on one day in November 2005 in order to illustrate the types of tasks that were needed. However, she continued to disregard the guidance of DSS and allowed the home to remain in a filthy state. Evidence was presented that respondent had the physical ability to comply with the requirements set forth, yet she never stated any reason why she could not comply. Her unwillingness to undertake the necessary efforts for four years demonstrated the likelihood that the children's neglect would continue if they were returned to her care. In addition, respondent's inability to properly care for the children during visitations provided further evidence of the likelihood of the same behavior continuing in the future. Evidence was presented that C.J.G.S. exhibited emotional and behavioral problems, and these problems increased after visitation with respondent. M.M.J.S. regressed in her toilet training each time she visited with respondent. Both children suffered from flea and insect bites and returned to foster care dirty and exhibiting injuries. Respondent was not always prepared for visitation with the children. Specifically, she did not have sufficient food in the house for the children or properly clean the house.
Respondent claimed her husband was the source of the unsanitary conditions, and testified that she and her husband separated on 27 January 2006, a couple of months before DSS ceased reunification efforts. The separation gave respondent some time to demonstrate an ability to maintain a clean home for the children;however, she failed to do so. Respondent also testified that she and her husband started talking again in the summer of 2006, and that he had stayed at her house until late July. Such testimony undermines respondent's credibility regarding her desire to eliminate the negative influences from her life that prevented her from reunifying with her children. In fact, the trial court did find respondent's testimony generally unconvincing, and since the trial court had the opportunity to listen to respondent's testimony and to weigh her credibility, we are unable to say the trial court erred in deciding to give her testimony little weight. See Hodges v. Hodges, 257 N.C. 774, 779, 127 S.E.2d 567, 571 (1962)(it is the trial judge's "right and duty to consider and weigh all the competent evidence before him, giving to it such probative value as in his sound discretion and opinion it is entitled to"). Nor did the trial court impermissibly shift the burden of proof to respondent; the court merely found her testimony not to be credible. We therefore find DSS presented sufficient evidence to support the trial court's findings. The trial court did not err in concluding respondent neglected her children and that such neglect was likely to be repeated if the children were returned to her care. Because we find the termination was properly based upon neglect, we need not address respondent's further arguments regarding the remaining ground for termination based upon failure to make reasonable progress while leaving the children in foster care for more than twelve months. N.C. Gen. Stat. § 7B-1111(a); In re Shermer, 156 N.C. App. 281, 285, 576 S.E.2d 403, 406 (2003) . Respondent next assigns error to the trial court's conclusion that termination of her parental rights is in the best interests of the children. Respondent argues the trial court impermissibly shifted the burden to her by concluding that "there is no evidence that it is contrary to the best interests of the minor child to terminate the parental rights of the Respondent mother." We disagree.
A trial court is not required to terminate parental rights even upon finding that statutory grounds exist to support termination. In re Tyson, 76 N.C. App. 411, 419, 333 S.E.2d 554, 559 (1985). The trial court's decision to terminate parental rights is reviewed for an abuse of discretion. Shermer, 156 N.C. App. at 285, 576 S.E.2d at 407 . In the instant case, DSS presented evidence regarding the progress of each child in their respective foster home placements. C.J.G.S. was placed in a therapeutic home that was separate from M.M.J.S.'s home in order to address specific behavioral and emotional issues. He acted out to a greater degree just prior to and following his visits with respondent, particularly the overnight visits. C.J.G.S. improved while in therapeutic foster care. Specifically, he made the honor roll and while at school, he controlled his emotions. M.M.J.S. initially had difficulty with speech and enunciation, as well as toilet training. Testimony from her foster mother indicated the toilet training was sporadic with M.M.J.S., because she would revert to wetting her clothes after returning from visits with her mother. Once the visitation was suspended in April 2006, M.M.J.S.'s wetting ceased. The children would also return from visitations with respondent dirty, hungry, and needing to eat right away. Both children learned daily routines while in foster care and were able to dress and groom themselves appropriately with guidance from their respective foster parents. Neither child had hygiene issues after visitation with respondent ceased.
After reviewing the record, prior court orders, transcripts, as well as the trial court's findings and conclusions in its order, we hold the trial court's findings of fact are supported by clear, cogent and convincing evidence and the findings of fact support the conclusions of law. Therefore, we find the trial court did not abuse its discretion in determining termination of respondent's parental rights was in the best interests of the children.
Based on the foregoing analysis, we affirm the order terminating respondent's parental rights.
Affirmed.
Judges GEER and STEPHENS concur.
Report per Rule 30(e).