IN RE: S.R. M.R. J.R. Y.R.
No. COA08-707
Court of Appeals of North Carolina
Filed November 18, 2008
This case not for publication
H. Lee Merritt, for petitioner-appellee Surry County Department of Social Services.
Pamela Newell Williams, for guardian ad litem.
Peter Wood, for respondent-appellant father.
MARTIN, Chief Judge.
Respondent appeals from an order terminating his parental rights as father of the minor children on the grounds of neglect and willfully leaving the children in foster care for more than twelve months without making reasonable progress to correct the conditions which led to the removal of the children.[1] We affirm.
The Surry County Department of Social Services ("DSS") became involved with this family when the children's mother informed DSS in late December 2005 that she could no longer take care of the children. Respondent had recently moved out of the home due to domestic violence and was not helping with child care. A social worker visited the home on 3 January 2006 and observed filthy conditions, including rotting food and trash throughout the house. On that day the children's mother left the children alone for at least an hour. Respondent stated he was leaving for Mexico due to his mother's death, he would be gone for at least one month, and he could not take the children with him. The mother stated she would not take care of the children and, on 10 January 2006, DSS took nonsecure custody of the children and filed juvenile petitions alleging neglect and dependency. The children were placed in foster care. Nonsecure custody was continued by orders signed 20 January 2006.
After a hearing held on 9 February 2006, the trial court entered orders on 17 February 2006 adjudicating the children neglected and dependent and giving DSS responsibility for placement of the children. Respondent entered into a case plan with DSS and agreed to: (1) take parenting classes; (2) engage in domestic violence counseling; (3) submit to a substance abuse evaluation and follow-up; (4) maintain employment and adequate housing; and (5) be willing to pay child support. Respondent was granted weekly visitation with his children.
From February to April 2006, respondent was incarcerated on charges of assault on a female and second-degree kidnapping after an incident involving the children's mother. Most of the charges were dismissed due to the mother's failure to appear. Respondent was evicted from his apartment while he was incarcerated. The children's mother moved back to Mexico and was not involved with the children or the case after early 2006.
A 90-day review hearing was held on 27 April 2006. No significant changes were made to the previous orders. On 2 November 2006, the court held a permanency planning review hearing. The report submitted to the court by DSS described the social worker's visit to respondent's new residence in Winston-Salem where respondent was living with his girlfriend and her two children. The social worker noted that respondent was not on the lease and he had only known his girlfriend for nine weeks; therefore, the housing situation was not secure and stable. Also, there were only three bedrooms and two single beds for the four people already living there. Both beds were in one room and the other bedrooms had only blankets and pillows on the floor. Finally, the neighborhood was not safe; the social worker had a police officer escort her to respondent's home. The social worker informed respondent that DSS did not consider the housing to be appropriate or safe for the children. In its report, DSS requested relief from reunification efforts and to change the permanent plan to adoption. After the hearing, the trial court made findings that respondent: (1) had been residing in Winston-Salem for approximately eight weeks; (2) had completed domestic violence counseling and parenting classes; (3) was participating in substance abuse counseling; (4) was visiting his children regularly on a weekly basis; and (5) was gainfully employed. In its order, the court stated it did not approve a plan of adoption as requested by DSS and ordered DSS to continue with reunification efforts. Respondent was ordered not to discuss the foster parents with the children.
Another permanency planning review hearing was held on 15 March 2007. The court found that respondent was unemployed and the two older children were attending counseling to deal with behavioral problems and adjustment issues. The two older children had stated they no longer wanted to visit with their father. The trial court stated that filing petitions to terminate parental rights would not be in the best interest of the children at that time, as DSS was still attempting to reunify the children with respondent. Respondent was ordered to participate in counseling with regard to the children's behavioral issues and to comply with recommendations. The report DSS submitted to the court recited respondent's intent to continue living with his girlfriend and his acknowledgment that without his girlfriend he could not survive financially.
At the next permanency planning review hearing held on 7 June 2007, the trial court found that respondent was no longer in a relationship with his girlfriend, had no permanent place to live, had no means of transportation, and did not have the financial ability to provide for himself. The court found that respondent had made little or no progress to correct the conditions which caused the removal of the children from the home. The court explicitly approved the change in the permanent plan to adoption, and relieved DSS of any further reunification efforts. DSS was ordered to initiate termination proceedings by filing petitions.
On 5 October 2007, DSS filed petitions to terminate respondent's parental rights, alleging the grounds of neglect, willful failure to provide financial support to pay for the cost of care of the children, and willfully leaving the children in foster care for more than twelve months without making reasonable progress to correct the conditions which led to the removal of the children.
At the next permanency planning review hearing held on 28 November 2007, the trial court found that respondent was living in Surry County again, was gainfully employed, and was making monthly child support payments. The court continued the permanent plan of adoption and stated that there had not been a substantial change of circumstances to warrant a change of the previous order. Although respondent began working again in August 2007, at the time of the November hearing, the children had been in foster care for 22 months.
The termination hearing was held on 10 January and 7 February 2008. The guardian ad litem's report prepared for the hearing noted that although respondent kept up visitation with the children, he had never progressed beyond supervised visitation. The report also stated that the two older children, aged nine and seven, wanted to remain with their foster parents rather than return to live with their father. Further, the foster parents intended to adopt all four of the children upon termination of respondent's parental rights, and the bond between the children and the foster parents was "strong," in the guardian ad litem's view. After taking evidence and testimony at the hearings, the trial court entered adjudication orders on 6 March 2008 finding that termination of respondent's parental rights as to all four children was justified due to respondent's (1) neglect and (2) willfully leaving the children in foster care for more than twelve months without making reasonable progress. The court entered separate disposition orders on the same date finding that termination is in the best interest of the children. From the orders entered, respondent appeals.
Respondent first argues the trial court had no subject matter jurisdiction over these cases because the summonses were defective. One set of summonses was issued on 5 October 2007 which named both parents and the guardian ad litem as respondents. The juveniles were not named as respondents. This set was served on respondent father on 9 October 2007. A second set of summonses was issued on 7 December 2007 which named the juveniles as additional respondents. This set was apparently never served on any party, although copies of both the petitions and summonses were served on the guardian ad litem by mailing a copy to the attorney for the guardian ad litem. Respondent contends neither set of summonses were sufficient to confer jurisdiction because the first set failed to name the juveniles as respondents and the second set was not properly issued because they were never served. We disagree.
The General Statutes provide, "[a] summons is issued when, after being filled out and dated, it is signed by the officer having authority to do so." N.C. Gen. Stat. § 1A-1, Rule 4(a) (2007). In termination of parental rights cases, a summons must also conform to section 7B-1106(a), which provides that a summons "shall be directed" to the following respondents:
(1) The parents of the juvenile;
(2) Any person who has been judicially appointed as guardian of the person of the juvenile;
(3) The custodian of the juvenile appointed by a court of competent jurisdiction;
(4) Any county department of social services or licensed child-placing agency to whom a juvenile has been released by one parent pursuant to Part 7 of Article 3 of Chapter 48 of the General Statutes or any county department of social services to whom placement responsibility for the child has been given by a court of competent jurisdiction; and
(5) The juvenile.
N.C. Gen. Stat. § 7B-1106(a) (2007). Here, both sets of summonses were properly filled out, dated, and signed by a deputy clerk of superior court. Although the initial summonses were not properly directed to the juveniles, summonses may be amended at any time "unless it clearly appears that material prejudice would result to substantial rights of the party against whom the process issued." N.C. Gen. Stat. § 1A-1, Rule 4(i). In this case, the summonses were amended prior to the beginning of the hearing, which began on 10 January 2008. We see no prejudice to either the juveniles or any other party to this action by the amendment of the summonses. Therefore, the summonses were properly amended to name the juveniles as respondents pursuant to section 7B-1106(a), and we find the summonses were properly issued as required. With respect to respondent's argument that the summonses were defective because they were not properly served, we note that once the summonses are properly issued, service becomes a personal jurisdiction issue, not a subject matter jurisdiction issue. See N.C. Gen. Stat. § 1A-1, Rule 4(j). Further, the record reflects that the guardian ad litem was served with the petitions and the summonses. Even if service was somehow improper or invalid, the guardian ad litem appeared at the termination hearing on both 10 January and 7 February 2008, thereby waiving any challenge to personal jurisdiction on behalf of the minor children. See In re D.B., C.B., 186 N.C. App. 556, 558, 652 S.E.2d 56, 58 (2007), aff'd per curiam, 362 N.C. 345, 661 S.E.2d 734 (2008) ("[P]ersonal jurisdiction . . . can be obtained by a party's appearance and participation in the legal proceeding without raising an objection to the lack of service." (internal quotation marks omitted)). Since the trial court properly had jurisdiction over these cases, respondent's assignments of error on this issue are overruled.
Respondent next argues the trial court erred in finding that grounds existed to terminate his parental rights because insufficient evidence failed to support the grounds. We do not agree.
Termination of parental rights cases are determined in two phases: (1) the adjudication phase, governed by N.C.G.S. § 7B-1109; and (2) the disposition phase, governed by N.C.G.S. § 7B-1110. See In re Baker, 158 N.C. App. 491, 493, 581 S.E.2d 144, 146 (2003). The petitioner has the burden of proving by clear, cogent, and convincing evidence that at least one ground for termination exists. See N.C. Gen. Stat. § 7B-1111(b) (2007); In re Blackburn, 142 N.C. App. 607, 610, 543 S.E.2d 906, 908 (2001). The standard of review on appeal is whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence and whether the conclusions of law are supported by the findings of fact. See In re Huff, 140 N.C. App. 288, 291, 536 S.E.2d 838, 840 (2000), disc. review denied, 353 N.C. 374, 547 S.E.2d 9 (2001). Findings of fact supported by competent evidence are binding on appeal even though there may be evidence to the contrary. See In re Williamson, 91 N.C. App. 668, 674, 373 S.E.2d 317, 320 (1988). A trial court only needs to find one statutory ground for termination before proceeding to the dispositional phase of the hearing. See N.C. Gen. Stat. § 7B-1111(a); In re Shermer, 156 N.C. App. 281, 285, 576 S.E.2d 403, 406 (2003). In the disposition phase, the trial court determines whether termination of parental rights is in the best interest of the child. See Blackburn, 142 N.C. App. at 610, 543 S.E.2d at 908.
Parental rights may be terminated when "[t]he parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." N.C. Gen. Stat. § 7B-1111(a)(2). Willfulness does not imply fault on the part of the parent, but may be established "'when the respondent had the ability to show reasonable progress, but was unwilling to make the effort.'" In re O.C. & O.B., 171 N.C. App. 457, 465, 615 S.E.2d 391, 396 (quoting In re McMillon, 143 N.C. App. 402, 410, 546 S.E.2d 169, 175 (2001)), disc. review denied, 360 N.C. 64, 623 S.E.2d 587 (2005). Even if a parent has made some efforts to regain custody, a trial court may still find that he or she willfully left the child in foster care under section 7B-1111(a)(2). See id.
Here, the reason for the removal of the children from their home was a lack of supervision, as well as unsafe and unsanitary conditions in the home. Respondent argues that he was not responsible for the conditions that led to the removal of the children because he was not living there at the time. He contends that he made reasonable efforts to keep his children out of foster care and that his compliance with his case plan constitutes reasonable progress.
In its order finding grounds to terminate parental rights, the trial court made the following findings of fact:
13. The family services case plan identified a need for the respondent-father to improve his parenting skills. Prior to being placed in the custody of [DSS], the [minor children] had been left alone for periods of time. The parents had not properly supervised their children nor properly maintained their residence. The residence where the children were residing immediately prior to be[ing] placed in the custody of [DSS] was littered with rotting food and trash. The conditions in the home and the lack of proper supervision by the parents exposed the [minor children] to serious injury and harm.
14. Respondent-father did attend a parenting class and completed the class in May 2006. In addition to attending the class, [DSS] wanted the father to demonstrate his parenting skills during the visits with the children.
15. Respondent-father has visited with the minor child[ren] regularly. The visits have been supervised by [DSS]. The visits have occurred both at [DSS's] offices and at other locations. During many of these visits, the children have been unruly and out of control. On these occasions, the social worker has intervened and helped the father re-gain control of the children. On several occasions, the social worker met with the father and encouraged the respondent-father to develop a plan of structured activities for the children during the visits. Even though the father has been strongly encouraged to do so, he has not developed a plan of structured activities for the children during the visits and the visits are often chaotic.
16. [DSS] also requested that the respondent-father obtain and maintain housing that would be suitable and safe for himself and his children. From April 2006 until early September 2006, the father resided in an apartment in Elkin which he shared with several other individuals. This was not a safe and suitable residence where the children could reside. From early September 2006 until June 2007, the father resided in Winston-Salem, North Carolina. In Winston-Salem, the father lived with a woman and her two (2) teenage children. The social worker and the volunteer guardian ad litem made a home visit to the residence in Winston-Salem. This house was not a suitable or safe residence for the children to reside. The father in July 2007 moved to Dobson, where he shared a residence with a male friend of his. This residence was not a safe or suitable residence for the children to reside in.
17. In May 2007, the social worker met with the father and discussed with him [DSS's] concerns with his living arrangements, his parenting skills, and his lack of progress in having the children returned to him. The social worker also told the father that [DSS] intended to ask the court to relieve [DSS] of reunification efforts at the next review hearing in June 2007.
18. A permanency planning review hearing was conducted in June 2007. The court entered an order on July 25, 2007, relieving [DSS] of reunification efforts. The court found that the respondent-father had made little or no progress to correct the conditions which existed at the time that the [minor children were] placed in the care of [DSS]. The court further found that it was not likely that the [minor children] would be returned to the father within the following six (6) months. At that time, the father had no means of transportation, no permanent place to live, nor did he have the financial ability to provide for himself. The father, at that time, had not paid child support on a regular basis and he had allowed a substantial arrearage to accumulate. The court approved at that time the permanent plan of adoption of the children.
19. The respondent-father has not demonstrated that he has the parenting skills necessary to provide appropriate care for his children.
20. The respondent-father has made some progress in correcting the conditions which existed at the time of the removal of the children from the parents' care. The progress that the father has made has been minimal and not measurable.
Respondent challenges findings 13, 15, 19, and 20, but does not challenge the others, which are presumed to be correct and supported by the evidence. See In re Moore, 306 N.C. 394, 404, 293 S.E.2d 127, 133 (1982). In particular, respondent does not challenge finding 16 regarding his failure to establish adequate housing for himself and his four children. We find that the findings are all supported by clear, cogent, and convincing evidence, both in the record as well as from testimony taken at the hearing. The record reflects that the children were removed from their home due to unsafe and unsanitary conditions, and that both parents were not providing proper supervision. Respondent did not challenge these allegations at the initial adjudication hearing finding neglect. At the termination hearing, a social worker testified that the visits between respondent and the children were chaotic and that despite her instructions to respondent to try to provide structured activities for the children, in her opinion, the structure of the visits had not improved over time. Finally, sufficient evidence was presented to support the trial court's determination that respondent had not demonstrated sufficient parenting skills or reasonable progress such that his children could be returned to him. Evidence was presented regarding the lack of structure and discipline at the visits with the children, as well as respondent's inability to find suitable housing or to maintain employment for the twelve months preceding the filing of the termination petitions. Even though some evidence was presented showing that respondent made some progress toward his case plan, such limited progress is not enough to show that the trial court erred in finding that respondent willfully left his children in foster care for more than twelve months without making reasonable progress. See O.C. & O.B., 171 N.C. App. at 465, 615 S.E.2d at 396. Since we find that the trial court properly based termination on the ground of failure to make reasonable progress pursuant to N.C.G.S. § 7B-1111(a)(2), we need not address respondent's arguments regarding the remaining ground for termination of neglect. See Shermer, 156 N.C. App. at 285, 576 S.E.2d at 406. Respondent's assignments of error regarding these issues are therefore overruled.
Finally, respondent contends the trial court abused its discretion by terminating his rights with respect to the four minor children. Respondent argues the trial court did not sufficiently consider the fact that three of the children are not United States citizens and that termination would not only separate them from their natural family and culture in Mexico, but would subject them to deportation since the United States is not their legal home. Respondent contends that the children are not adoptable due to their illegal immigrant status, and that when no reasonable chance of adoption exists, it is reversible error to terminate parental rights. We are not persuaded by respondent's arguments.
By statute, a trial court is required to consider certain factors when determining whether termination is in the best interest of the minor children:
(1) The age of the juvenile.
(2) The likelihood of adoption of the juvenile.
(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
(4) The bond between the juvenile and the parent.
(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
(6) Any relevant consideration.
N.C. Gen. Stat. § 7B-1110(a) (2007). The determination by the trial court that termination is in the best interest of the children will not be overturned absent an abuse of discretion. See Shermer, 156 N.C. App. at 285, 576 S.E.2d at 406-07.
Here, the trial court stated that it considered all of the statutory factors, particularly the positive relationship between the children and the foster parents and the likelihood of adoption by the foster parents. Although the court acknowledged respondent's love and affection for his children, the court concluded that termination of parental rights would aid in the permanent plan of adoption and that termination would be in the children's best interest.
Respondent does not support his contention that the children could not be adopted by the foster parents. Evidence was presented that the foster parents intended to adopt all four of the children, and that the bond between the children and the foster parents is very strong. Respondent also fails to indicate how termination of his parental rights would subject his children to a greater risk of deportation. We therefore find the trial court did not abuse its discretion in determining that termination of respondent's parental rights was in the best interest of the children. Accordingly, we affirm the orders of the trial court.
Affirmed.
Judges ELMORE and STEELMAN concur.
Report per Rule 30(e).
NOTES
[1] The children's mother did not appeal the termination of her parental rights and is therefore not a party to this appeal.