IN RE: M.R.D.C.

No. COA04-2

(Filed 2 November 2004)

## 1. Child Abuse and Neglect— permanency planning order—findings of fact—placement with relative

The trial court erred in a child neglect case by entering a permanency planning order that does not comply with the statutory requirements of N.C.G.S. § 7B-907, because: (1) the issue of the child's possible placement with her paternal grandmother was relevant and thus N.C.G.S. § 7B-907(b)(2) required the trial court to make findings of fact on the subject; and (2) the permanency planning order does not demonstrate the trial court's processes of logical reasoning from the evidentiary facts.

## 2. Child Abuse and Neglect— reunification efforts—findings of fact—conclusions of law—sufficiency of evidence

On remand, the trial court in a child neglect case must re-examine the issue of whether there were sufficient findings of fact and conclusions of law to satisfy the provisions of N.C.G.S. §§ 7B-907(c) and 7B-507 so that petitioner Department of Social Services could be relieved from efforts to reunify respondent father with his daughter.

## 3. Child Abuse and Neglect— responsibilities and procedures for permanency plan—timing of filing petition for termination of parental rights

The trial court was required in a child neglect case to comply with N.C.G.S. § 7B-907(b) and (c) even though the minor child was in DSS custody for more than 12 of the 22 months before the

IN RE M.R.D.C.

[166 N.C. App. 693 (2004)]

hearing and the trial court's order stated that none of the circumstances set forth in N.C.G.S. § 7B-907(d) which would obviate the need for a termination of parental rights proceeding being filed are present, because: (1) contrary to petitioner Department of Social Services' (DSS) assertion, *In re Dula*, 143 N.C. App. 15 (2001), does not stand for the proposition that a child's placement in DSS custody for a year automatically relieve DSS from further reunification efforts or relieves the trial court of the obligation to make findings of fact to establish a permanency plan consistent with the legislative goal of achieving a safe permanent home for the juvenile within a reasonable period of time; (2) although N.C.G.S. § 7B-907(d) includes among the exceptions to the requirement that DSS initiate termination of parental rights proceedings a finding that the permanent plan for the juvenile is guardianship or custody with a relative or some other suitable person, the trial court entered a deficient permanency planning order in the instant case, and without a valid permanency planning order the trial court was necessarily unable to make a valid N.C.G.S. § 7B-907(d)(1) finding regarding the nature of the permanency plan; and (3) N.C.G.S. § 7B-907(d) does not operate as a substitute for the trial court's failure to satisfy the requirements of N.C.G.S. § 7B-907(b) and (c) when N.C.G.S. § 7B-907(d) addresses, in large measure, the timing of when DSS must file a petition for termination of parental rights whereas N.C.G.S. § 7B-907(b) governs the trial court's responsibilities and required procedures for establishing a permanent plan for the juvenile.

Appeal by respondent from order entered 28 July 2003 by Judge David V. Byrd in Wilkes County District Court. Heard in the Court of Appeals 15 September 2004.

*Marjorie S. Canaday for respondent-appellant.*

*Paul W. Freeman, Jr., for petitioner Wilkes County DSS.*

LEVINSON, Judge.

Respondent, Michael Conley, appeals from a permanency planning order relieving petitioner, Wilkes County Department of Social Services (DSS), from efforts to reunify him with his daughter Mary.[1]

---

1. To protect the identity of the minor child, this Court will refer to her by the pseudonym "Mary."

**IN RE M.R.D.C.**

[166 N.C. App. 693 (2004)]

The procedural history of this case is summarized as follows: On 26 July 2001 petitioner filed a petition alleging that Mary was neglected, in that respondent and Mary's mother, Latosha Triplett (Triplett), had failed to provide proper care, supervision, or discipline for Mary. A nonsecure custody order was issued on 6 August 2001, and Mary was placed in DSS custody. On 22 October 2001 respondent signed a consent order which adjudicated Mary neglected and continued her in DSS custody. An initial permanency planning hearing was conducted beginning on 14 October 2002, and continuing on 9 December 2002, 30 January 2003, and 10 March 2003. In July 2003 the trial court entered a permanency planning order continuing Mary's custody with DSS, relieving DSS from any further efforts to reunify Mary with respondent, and directing DSS to initiate proceedings for termination of respondent's parental rights. From this order, respondent appeals.

---

[1] Respondent argues first that the trial court erred by entering a permanency planning order that does not comply with the statutory requirements of N.C.G.S. § 7B-907 (2003). We agree.

The goal of the permanency planning hearing is "to develop a plan to achieve a safe, permanent home for the juvenile within a reasonable period of time." N.C.G.S. § 7B-907(a) (2003). In so doing, " '[o]ne of the essential aims, if not the essential aim, of . . . [the hearing] is to reunite the parent(s) and the child, after the child has been taken from the custody of the parent(s).' " *In re Eckard,* 144 N.C. App. 187, 196, 547 S.E.2d 835, 841 (2001) (quoting *In re Shue,* 311 N.C. 586, 596, 319 S.E.2d 567, 573 (1984)). Accordingly, G.S. § 7B-907 requires that, if a juvenile is not returned home at the conclusion of a permanency planning hearing, the trial court must consider certain specified criteria and "make written findings regarding those that are relevant." N.C.G.S. § 7B-907(b) (2003). These factors include, in pertinent part:

(1) Whether it is possible for the juvenile to be returned home immediately or within the next six months, and if not, why it is not in the juvenile's best interests to return home;

(2) Where the juvenile's return home is unlikely within six months, whether legal guardianship or custody with a relative or some other suitable person should be established[.]

N.C.G.S. § 7B-907(b)(1) and (2) (2003). It is reversible error for the trial court to enter a permanency planning order that continues cus-

IN RE M.R.D.C.

[166 N.C. App. 693 (2004)]

tody with DSS without making proper findings as to the relevant statutory criteria. *See, e.g., In re J.S.,* 165 N.C. App. 509, 598 S.E.2d 658 (2004) (reversing and remanding permanency planning order that failed to make findings of fact required by G.S. § 7B-907(b)). This rule applies even if "the evidence and reports in this case might have supported the determination of the trial court." *In re Ledbetter,* 158 N.C. App. 281, 286, 580 S.E.2d 392, 395 (2003) (reversing on the grounds that "our statute requires the court to consider the G.S. § 7B-907(b) factors and make relevant findings").

A permanency planning order need not "contain a formal listing of the G.S. § 7B-907(b) (1)-(6) factors, expressly denominated as such . . . as long as the trial court makes findings of fact on the relevant G.S. § 7B-907(b) factors[.]" *In re J.C.S.,* 164 N.C. App. 96, 106, 595 S.E.2d 155, 161 (2004). However, in its order:

> the trial court must, through "processes of logical reasoning," based on the evidentiary facts before it, "find the ultimate facts essential to support the conclusions of law." The resulting findings of fact must be "sufficiently specific to enable an appellate court to review the decision and test the correctness of the judgment."

*In re J.S.,* 165 N.C. App. at 511, 598 S.E.2d at 660 (quoting *In re Harton,* 156 N.C. App. 655, 660, 577 S.E.2d 334, 337 (2003), and *Quick v. Quick,* 305 N.C. 446, 451, 290 S.E.2d 653, 657 (1982)).

In the instant case, respondent argues that the trial court erred by failing to make the findings of fact required by G.S. § 7B-907(b)(2), regarding whether Mary might be placed with her paternal grandmother, Ms. Rachel Conley (Rachel). The uncontradicted evidence before the trial court tended to show the following: Rachel testified that she had told DSS "from day one" that she would like to have custody of Mary if the child could not be placed with respondent. She is a 53 year old Certified Nursing Assistant, employed full time at Broughton Hospital. Rachel owns her own home located a few miles from respondent, which she shares with her disabled 27 year old son. Triplett had previously left Mary with Rachel on many occasions, for periods as long as two weeks. Rachel's older son and other relatives live within a few miles of Rachel's house, and could provide back-up day care for Mary as needed. In addition to this uncontradicted evidence, conflicting testimony was offered regarding whether Rachel had made statements indicating she was frightened of respondent, and whether she had been uncooperative with DSS efforts to locate

respondent. During the hearing, the trial court questioned petitioner as to why greater consideration had not been given to placement with Rachel. In response, DSS social worker Sonya Freeman testified that one phone message had been left with Burke County DSS about setting up a home study, but that when the phone call was not returned DSS had failed to follow up. We conclude that the issue of Mary's possible placement with Rachel was relevant and thus that G.S. § 7B-907(b)(2) required the trial court to make findings of fact on the subject.

We next consider the sufficiency of the trial court's findings of fact on this issue. Only one of the trial court's findings of fact makes any reference to Mary's grandmothers:

> 23. Due to the maternal grandmother's history of being involved in abusive relationships and continuing to surround herself with convicted sex offenders and physically abusive persons, and neither grandmother is a suitable placement for the child [sic]. There are no other relatives who are willing and able to provide proper care and supervision of the child in a safe home.

This finding is generally concerned with Mary's **maternal** grandmother, and does not discuss Rachel. The finding does include a cursory statement that "neither grandmother is a suitable placement for the child." However, although this statement is included in one of the trial court's findings of fact, it is actually a conclusion of law:

> Matters of judgment are not factual; they are conclusory and based ultimately on various factual considerations. Facts are things in space and time that can be objectively ascertained by one or more of the five senses or by mathematical calculation. Facts, in turn, provide the bases for conclusions.

*State ex rel. Utils. Comm. v. Public Staff*, 322 N.C. 689, 693, 370 S.E.2d 567, 570 (1988). "We note that, '[i]f [a] finding of fact is essentially a conclusion of law . . . it will be treated as a conclusion of law which is reviewable on appeal.'" *Smith v. Beaufort County Hosp. Ass'n*, 141 N.C. App. 203, 214, 540 S.E.2d 775, 782 (2000) (quoting *Bowles Distributing Co. v. Pabst Brewing Co.*, 69 N.C. App. 341, 344, 317 S.E.2d 684, 686 (1984)).

We conclude that Finding of Fact number 23 does not contain any factual findings pertaining to Rachel. However, petitioner argues that the trial court's conclusion that "neither grandmother is a suitable placement for the child" is supported by finding of fact number 1:

**IN RE M.R.D.C.**

[166 N.C. App. 693 (2004)]

1. The status of the above-named juvenile is accurately described in those certain Court Summaries prepared by the Social Worker and the Guardian Ad Litem, the same having been admitted into evidence and being incorporated herein as Findings of Fact.

Petitioner contends that the effect of Finding number 1 is that any statement in these Summaries constitutes a "finding of fact" made by the trial court. "At any permanency planning review, the court shall consider information from the parent, the juvenile, the guardian, any foster parent, relative[,] . . . the custodian or agency with custody, the guardian ad litem, and any other person or agency which will aid it in the court's review. The court may consider any evidence, including hearsay evidence . . . that the court finds to be relevant, reliable, and necessary to determine the needs of the juvenile and the most appropriate disposition." G.S. § 7B-907(b). Moreover, "it is permissible for trial courts to consider all written reports and materials submitted in connection with [juvenile] proceedings." *In re J.S.*, 165 N.C. App. at 511, 598 S.E.2d at 660 (citing *In re Ivey*, 156 N.C. App. 398, 402, 576 S.E.2d 386, 390 (2003)). However, "[d]espite this authority, the trial court may not delegate its fact finding duty." *Id.* (citing *In re Harton*, 156 N.C. App. at 660, 577 S.E.2d at 337). Accordingly, "the trial court should not broadly incorporate these written reports from outside sources as its findings of fact." *Id.* Thus, although the trial court may properly incorporate various reports into its order, it may not use these as a substitute for its own independent review.

We also note that neither the record on appeal, nor the transcript of court proceedings, indicates which, if any, Court Summaries were offered as evidence. Further, Court Summaries are prepared for every review hearing, and the finding of fact does not identify which Court Summaries are referred to. Nonetheless, because the record on appeal includes two Court summaries prepared by the Guardian *ad litem* and one Summary prepared by DSS, we presume that the trial court intended to treat these three Summaries as the ones referenced in its order. But assuming, *arguendo*, that these unmarked Summaries were the ones described as "having been admitted into evidence," and that they are "incorporated herein as Findings of Fact," the Summaries nonetheless fail to address the issue of whether Mary might appropriately be placed with Rachel.

The DSS Court Summary does not discuss Rachel at all. The GAL Summaries each include the following paragraph referencing Rachel:

Rachel Conley is the paternal grandmother of [Mary]. She does not want [Mary] to be "adopted out." She would like to have custody of the child. However, past information indicates that Mrs. Conley did not cooperate with Wilkes County DSS when they tried to locate Mr. Conley. Mrs. Conley was present at recent visit with [Mary] and her father, Allen Conley. I did not observe any particular interaction between [Mary] and Mrs. Conley at that time. Mrs. Conley has not directly stated to me that she would like to see [Mary] placed with her father.

The GAL testified that her contact with Rachel was limited to a single occasion, when Rachel accompanied respondent to a scheduled visit with Mary. It is apparent from the above paragraph that nothing of note occurred at this sole meeting. Nothing in the paragraph addresses the suitability of Rachel's home or her abilities to care for Mary.

Further, the statement that "past information indicates that Mrs. Conley did not cooperate with Wilkes County DSS when they tried to locate Mr. Conley" is nothing more than the GAL's recitation of information obtained from others. Therefore, even if it is adopted as a "finding of fact" the only "fact" thus referenced is that at some point the GAL received "past information" concerning Rachel's lack of cooperation with DSS efforts to locate respondent. This was directly contradicted by Rachel's testimony at the hearing. "Recitations of the testimony of each witness *do not* constitute *findings of fact* by the trial judge, because they do not reflect a conscious choice between the conflicting versions of the incident in question which emerged from all the evidence presented." *Moore v. Moore*, 160 N.C. App. 569, 571-72, 587 S.E.2d 74, 75 (2003) (quoting *In re Green*, 67 N.C. App. 501, 505 n.1, 313 S.E.2d 193, 195 n.1 (1984)). "Where there is directly conflicting evidence on key issues, it is especially crucial that the trial court make its own determination as to what pertinent facts are actually established by the evidence, rather than merely reciting what the evidence may tend to show." *In re Gleisner*, 141 N.C. App. 475, 480, 539 S.E.2d 362, 366 (2000).

" 'When a trial court is required to make findings of fact, it must make the findings of fact specially.' Additionally, '[t]he trial court may not simply 'recite allegations,' but must through 'processes of logical reasoning from the evidentiary facts' find the ultimate facts essential to support the conclusions of law.' " *In re Weiler*, 158 N.C. App. 473, 478, 581 S.E.2d 134, 137 (2003) (quoting *In re Harton*, 156 N.C. App.

at 660, 577 S.E.2d at 337). In the instant case the permanency planning order does not demonstrate the trial court's "processes of logical reasoning from the evidentiary facts," *id.*, with regards to the possibility of placing Mary with Rachel. Accordingly, the permanency planning order fails to comply with G.S. § 7B-907(b).

[2] Respondent next argues that the trial court erred by ordering that DSS be relieved of further efforts to eliminate the need for placement of the juvenile. Respondent argues that this order was not supported by the findings of fact required under N.C.G.S. §§ 7B-907(c) and 7B-507(b) (2003). G.S. § 7B-907(c) provides that "[i]f the court continues the juvenile's placement in the custody or placement responsibility of a county department of social services, the provisions of G.S. § 7B-507 shall apply to any order entered under this section." G.S. § 7B-507(b) provides in relevant part that in "any order placing a juvenile in the custody or placement responsibility of a county department of social services . . . the court may direct that reasonable efforts to eliminate the need for placement of the juvenile shall not be required or shall cease if the court makes [certain required] written findings of fact." Respondent contends that the only finding to address the issue of reasonable efforts is the following:

16. The Wilkes County Department of Social Services has utilized reasonable efforts to eliminate the need for placement of the child, as more particularly appears from the aforesaid Court Summaries.

DSS, on the other hand, relies not only on this finding but additional ones to argue that the trial court's order complies with G.S. §§ 7B-907(c) and 7B-507. Because we have already determined that this case must be remanded for entry of findings on the issue of whether Mary could be placed with Rachel, we need not address the sufficiency of the findings and conclusions as to whether these provisions are satisfied. Nonetheless, we urge the trial court to reexamine this issue on remand.

[3] We next address petitioner's argument that, even if the trial court's order fails to satisfy the requirements of G.S. § 7B-907(b) and (c), its findings related to N.C.G.S. § 7B-907(d) (2003) operate as a substitute for this failure. G.S. § 7B-907(d) provides:

(d) In the case of a juvenile who is in the custody or placement responsibility of a county department of social services, and has

IN RE M.R.D.C.

[166 N.C. App. 693 (2004)]

been in placement outside the home for 12 of the most recent 22 months . . . the director of the department of social services shall initiate a proceeding to terminate the parental rights of the parent unless the court finds:

(1) The permanent plan for the juvenile is guardianship or custody with a relative or some other suitable person;

(2) The court makes specific findings why the filing of a petition for termination of parental rights is not in the best interests of the child; or

(3) The department of social services has not provided the juvenile's family with such services as the department deems necessary, when reasonable efforts are still required to enable the juvenile's return to a safe home.

Petitioner contends that the trial court was not required to comply with G.S. § 7B-907(b) and (c) under the circumstances herein, inasmuch as (1) Mary was in DSS custody for more than 12 of the 22 months before the hearing, and (2) the trial court's order stated that none "of the circumstances set forth in N.C.G.S. § 7B-907(d) which would obviate the need for a termination of parental rights proceeding being filed are present." In support of this argument, petitioner cites *In re Dula*, 143 N.C. App. 16, 19, 544 S.E.2d 591, 593 (2001), which held that DSS "can also be relieved of the obligation of making reasonable efforts if a child has been in placement outside the home for the period of time and under the conditions referenced in section 7B-907(d)." However, *Dula* **does not** stand for the proposition that a child's placement in DSS custody for a year automatically relieves DSS from further reunification efforts, or relieves the trial court of the obligation to make findings of fact to establish a permanency plan consistent with the legislative goal of "achiev[ing] a safe permanent home for the juvenile within a reasonable period of time." G.S. § 7B-907(a). Rather, *Dula* held:

If the department of social services has made unsuccessful reasonable efforts during the [12] months the child has been in placement outside the home, **pursuant to section 7B-907(b)**, the efforts of the department of social services and the courts must be redirected to developing a permanent placement for that child outside the home[.] . . . T]he trial court made numerous findings in its orders entered prior to [the hearing at issue] that DSS had made 'reasonable efforts to prevent or eliminate the need for

placement of the juvenile' outside the home. Respondent does not assign error to those findings. Thus, the trial court, . . . had no obligation to further attempt to reunify the parent and child and, indeed, had the obligation to locate permanent placement for the child outside of Respondent's home.

*Id.* at 19, 544 S.E.2d at 593-94 (emphasis added). The opinion in *Dula* thus makes clear that the trial court had addressed the issue of DSS efforts to reunify the minor child with her parents in earlier orders, which orders were included in the record, and to which findings respondent did not assign error. It was this earlier documentation, rather than the mere passage of 12 months in DSS custody, that determined the result in *Dula*.

Moreover, G.S. § 7B-907(d)(1) includes among the exceptions to the requirement that DSS initiate termination of parental rights proceedings a finding that "[t]he **permanent plan** for the juvenile is guardianship or custody with a relative or some other suitable person." (emphasis added). But, in the instant case, the trial court entered a **deficient** permanency planning order. Accordingly, without a valid permanency planning order, the trial court was **necessarily unable** to make a valid G.S. § 7B-907(d)(1) finding regarding the nature of the permanent plan. Finally, petitioner's argument fails to recognize that G.S. § 7B-907(d) addresses, in large measure, the **timing** of when the department of social services must file a petition for termination of parental rights, whereas G.S. § 7B-907(b) governs the trial court's responsibilities and required procedures for **establishing** a permanent plan for the juvenile. We conclude, therefore, that the trial court's conclusion that none "of the circumstances set forth in N.C.G.S. § 7B-907(d) which would obviate the need for a termination of parental rights proceeding being filed are present[]" does not substitute for the court's obligation to fulfill its obligations pursuant to G.S. § 7B-907(b) and (c).

Given our decision to reverse and remand this matter, it is unnecessary to address the remaining assignments of error.

"For the reasons discussed herein, we reverse the trial court's permanency planning order and remand for proceedings consistent with this opinion. It is within the trial court's discretion to allow additional evidence prior to making findings of fact and conclusions of law." *In re J.S.*, 165 N.C. App. at 514, 598 S.E.2d at 662 (citing *In re Anderson*, 151 N.C. App. 94, 564 S.E.2d 599 (2002)).

Reversed and Remanded.

Judges GEER and THORNBURG concur.