In the Matter of: N.M.W., A Minor Child.
No. COA09-39
Court of Appeals of North Carolina.
Filed June 16, 2009
This case not for publication
Baddour, Parker & Hine, PC, by James W. Spicer, III, for Petitioner-Appellee Wayne County Department of Social Services.
Robin E. Strickland, for Respondent-Appellant.
Parker, Poe, Adams & Bernstein, L.L.P., by Kristy L. Rice, for Guardian Ad Litem.
BEASLEY, Judge.
M.C. (Respondent), mother of N.M.W.[1], appeals from an order terminating her parental rights. For the reasons stated below, we affirm the trial court's order.
The evidence is as follows: N.M.W. was born to Respondent on 29 September 2002. When N.M.W. was born, Respondent was living with her husband and four other children. In June through July of 2006, Wayne County Department of Social Services (Petitioner) received a report that one of the children had the appearance of "cigarette burns on both wrist[s]" and that both parents were abusing crack cocaine and marijuana. During a Child Family Team Meeting in September 2006, a case plan was devised that included random drug screens, substance abuse assessment for Respondent and her husband, and family counseling.
In October 2006, Petitioner received a report alleging that N.M.W. was sexually assaulted. In December 2006 at a second Child Family Team Meeting, Respondent and her husband were asked to make a plan of care for their children. On 29 December 2006 Respondent placed the children with their maternal great aunt and uncle, Linda and Kenneth Sasser (Sassers).
In January 2007, Petitioner filed a petition alleging that N.M.W. was a neglected juvenile. The petition alleged that N.M.W. "[did] not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker" and that she "[lived] in an environment injurious to the juvenile's welfare."
At a pre-adjudication conference in February 2007, the trial court ordered that the "legal, non-secured custody" of Respondent's children, including N.M.W., would be placed with the Sassers. Following the conference, the trial court entered an order in February 2007 placing the "temporary custody" of N.M.W. with the Sassers. The Sassers were also given the authority "to consent to medical, surgical, dental, psychiatric, psychological, or other treatment for the juvenile."[2] During an April 2007 hearing, the trial court found, in adjudicating N.M.W as neglected, that Respondent "admitted that at the time of the filing of the petition the juvenile was a neglected juvenile, and that there is a factual basis for the [c]ourt to make such a finding." The trial court also found that N.M.W. had been sexually molested when she was in the home of Respondent and her husband. Because the trial court found that it would be deleterious to the welfare of N.M.W. to be placed in custody of Respondent, the trial court ordered that custody of N.M.W. remain with the Sassers.
In August 2007, the trial court ordered that Respondent participate in parenting classes, obtain a mental health assessment, and participate in therapy sessions with N.M.W. as recommended by the therapist. Legal and physical custody of N.M.W. remained with the Sassers.
During July through September of 2007, a social worker for Petitioner visited the home of the Sassers. Petitioner received reported allegations that N.M.W. had been abused and neglected in the home and the Petitioner observed unsatisfactory living conditions. In the September 2007 order, the trial court ordered that legal and physical custody of N.M.W. be placed with Petitioner. In January 2008, the trial court found that Respondent had made some progress, but ordered the legal and physical custody of N.M.W. remain with Petitioner. The court adopted a concurrent permanent plan for N.M.W. of "reunification of [N.M.W.] with [Respondent], guardianship with a Court approved caretaker or termination of parental rights and adoption." The trial court also ordered that Respondent obtain and maintain suitable housing, undergo a psychiatric and psychological examination, take an empowerment class, attend Parents Anonymous, and demonstrate the ability to provide care for her child.
In March 2008, Petitioner filed a petition alleging that Respondent "ha[d] neglected [N.M.W.] and continue[d] to neglect [N.M.W.]," and requested that the court terminate Respondent's parental rights to N.M.W. In October 2008, the trial court entered an order finding, in pertinent part, the following:
18. That [Respondent] has resided at 6 different places since the juvenile was removed from her home.
. . . .
32. That [Respondent] has not participated in any therapy with [N.M.W.]
. . . .
41. That the grounds exist to terminate the parental rights of [Respondent] . . . with respect to [N.M.W.] in that [Respondent] has neglected [N.M.W.]. The Court is concerned that the [Respondent] is unable to protect [N.M.W.] as she has failed to protect [N.M.W.] in the past.
. . . . 47. That in spite of the fact that [Respondent] has completed parenting classes, it does not appear that she has learned to properly parent her children.
. . . .
51. That it is in the best interest of [N.M.W.] to terminate the parental rights of [Respondent].
Based upon these findings of fact, the trial court terminated Respondent's parental rights as to N.M.W. Respondent appeals.

TERMINATION OF PARENTAL RIGHTS
Respondent first argues that the trial court erred in terminating Respondent's parental rights. Respondent contends that the order to terminate her rights was not based on findings of fact supported by competent evidence. We disagree.
Respondent argues that the trial court erred when it made findings of fact numbers 18, 32, 41, 47, and 51, as referenced above. Respondent asserts that findings of fact numbers 18, 32, and 47 were not supported by the evidence presented, and that numbers 41 and 51 are not findings of fact, but rather more properly classified as conclusions of law.
In a proceeding for the termination of parental rights, the trial court must conduct an adjudicatory hearing and a dispositional hearing. In re Baker, 158 N.C. App. 491, 493, 581 S.E.2d 144, 146 (2003). In the adjudicatory phase, under N.C. Gen. Stat. § 7B-1109, "[t]he court shall take evidence, find the facts, and shall adjudicate the existence or nonexistence of any of the circumstances set forth in G.S. [.] 7B-1111 which authorize the termination of parental rights of the respondent." N.C. Gen. Stat. § 7B-1109(e) (2007). "In this stage, the court's decision must be supported by clear, cogent and convincing evidence with the burden of proof on the petitioner." In re Blackburn, 142 N.C. App. 607, 610, 543 S.E.2d 906, 908 (2001). "Once one or more of the grounds for termination are established, the trial court must proceed to the dispositional stage where the best interests of the child are considered." Id. (emphasis added). Here, "the [trial] court's decision whether to terminate parental rights is discretionary." In re Williamson, 91 N.C. App. 668, 680, 373 S.E.2d 317, 323 (1988).
"`On appeal, our standard of review for the termination of parental rights is whether the trial court's findings of fact are based upon clear, cogent and convincing evidence and whether the findings support the conclusions of law.'" In re J.S.L., 177 N.C. App. 151, 154, 628 S.E.2d 387, 389 (2006) (quoting In re Baker, 158 N.C. App. 491, 493, 581 S.E.2d 144, 146 (2003)). If the court's findings are supported by "ample, competent evidence, they are binding on appeal, even though there may be evidence to the contrary." Williamson, 91 N.C. App. at 674, 373 S.E.2d at 320.
First, finding of fact number 18 stated that Respondent had resided in six different places since N.M.W. was removed from her home. Although Respondent argues that this finding is without merit and unsupported by the evidence, she lists six different residences in her brief. Respondent states that she lived in the home she shared with her then husband until September 2007, lived in her mother's house until February 2008, moved to Jacksonville, North Carolina where she resided until March 2008, returned to Goldsboro to live on her own on Virginia Street, moved into a friend's apartment on Virginia Street, and moved with friends to a residence on Slaughter Street. Trenesha Evans (Evans), a foster care social worker for Petitioner, also testified that she was aware of at least six different places of residence for Respondent since January 2007. There is sufficient, competent evidence to support the trial court's finding of fact number 18.
Finding of fact number 32 states that "[Respondent] has not participated in any therapy with [N.M.W.]." Respondent argues that this finding "presupposes that [Respondent] had an opportunity to participate in therapy with [N.M.W.]" Respondent argues that because she was never invited to participate in N.M.W.'s therapy, she "should not be penalized for something that [Respondent] neither had the ability nor was asked to do." In the October 2007 Order, Respondent was ordered to participate in therapy sessions for N.M.W. upon request by the therapist. However, Respondent testified that she had no contact with N.M.W.'s therapist and had not participated in any therapy with N.M.W. There is no evidence in the record that a therapist requested participation by Respondent. Respondent would only have been allowed to participate in N.M.W.'s therapy if her participation was requested by a therapist. Therefore, we are not able to determine that the trial court's finding of fact number 32 is based on "clear, cogent, and convincing evidence." N.C. Gen. Stat. § 7B-1109(f) (2007). However, this finding of fact did not prejudice Respondent and was harmless error as it "could not [have] in any manner affected the [trial court's order.]" State v. VanCamp, 150 N.C. App. 347, 355, 562 S.E.2d 921, 927 (2002).
Finding of fact number 47 states that "in spite of the fact that [Respondent] has completed parenting classes, it does not appear that she has learned to properly parent her children." Respondent argues that this finding was not based on evidence because the trial court erroneously considered whether Respondent could properly parent all five of her children, rather than whether Respondent could properly parent N.M.W. Evans testified that while supervising the visitations with Respondent's children, Respondent did not display any specific skills, coping techniques, or discipline techniques that were taught at parenting classes. Although Evans testified that Respondent had learned to better communicate with her children, Evans also testified that Respondent's children, including N.M.W., were "out of control" during a visit. A Guardian Ad Litem court report filed in January 2008 also noted that Respondent was unable to discipline her children when they displayed behavioral issues. Evans testified that she did not believe Respondent was able to protect N.M.W. from further abuse. Based on Petitioner's evidence, finding of fact number 47 was supported by sufficient evidence.
In contesting findings of fact 41 and 51, Respondent argues that they are mis-classified and better qualify as conclusions of law. We agree that findings of fact 41 and 51, which find that grounds exist to terminate the parental rights of Respondent because she has neglected N.M.W., that Respondent is unable to protect N.M.W., and that it is in the best interest of N.M.W. that the trial court terminate the parental rights of Respondent, are more appropriately characterized as conclusions of law. However, "`if [a] finding of fact is essentially a conclusion of law . . . it will be treated as a conclusion of law which is reviewable on appeal.'" In re R.A.H., 182 N.C. App. 52, 60, 641 S.E.2d 404, 409 (2007) (quoting In re M.R.D.C., 166 N.C. App. 693, 697, 603 S.E.2d 890, 893 (2004)).
"Nevertheless, th[ese] conclusion[s] w[ere] fully supported by the trial court's . . . [51] findings of fact." Id. Regarding finding of fact 41, there was ample evidence from the trial court's findings that Respondent had previously neglected N.M.W. and that the trial court was concerned about Respondent's ability to protect N.M.W. The trial court's classification of finding of fact 51 is insignificant as it reiterated its finding in the conclusions of law stating, "[t]hat the best interest of the juvenile will be promoted and served by terminating the parental rights of the [Respondent]." "Accordingly, its mislabeling was inconsequential in this case." Id. This assignment of error is overruled.

BEST INTERESTS OF THE CHILD
In her second argument, Respondent contends that the trial court erred in concluding that the best interests of N.M.W. was to terminate Respondent's parental rights. Respondent argues that because the trial court erroneously determined that sufficient grounds existed to terminate her parental rights, the trial court improperly proceeded to the following step of determining N.M.W.'s best interests. We disagree.
Our Court has established that, "[i]t is within a district court's discretion to terminate parental rights upon a finding that it would be in the best interest of the child. The district court's decision to terminate parental rights is reviewed under an abuse of discretion standard." In re R.R., 180 N.C. App. 628, 634, 638 S.E.2d 502, 506 (2006).
N.C. Gen. Stat. § 7B-1111 delineates the possible grounds for terminating parental rights. "The court may terminate the parental rights upon a finding . . . of the following: (1) The parent has abused or neglected the juvenile. The juvenile shall be deemed to be . . . a neglected juvenile within the meaning of G.S. 7B-101." N.C. Gen. Stat. § 7B-1111(a)(1) (2007). A neglected juvenile is one, "who does not receive proper care, supervision, or discipline from the juvenile's parent . . .; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare. . . ." N.C. Gen. Stat. § 7B-101(15) (2007).
In the present case, the trial court concluded by clear, cogent, and convincing evidence that N.M.W. was neglected as a matter of law. "In determining neglect, the trial judge must find evidence of neglect at the time of the termination proceeding." In re Blackburn, 142 N.C. App. at 611, 543 S.E.2d at 909. The trial court made the following findings of fact at the termination hearing: N.M.W. reported to Respondent that she was sexually abused by several people, Respondent did not seek outside support or medical attention; Respondent had no room for N.M.W. in the home where she resided with friends and no probability of stable housing; Respondent was not employed; Respondent had tested positive for marijuana in April 2008; Respondent had missed at least seven visits with N.M.W. within the preceding fourteen months; and although Respondent had completed parenting classes, she could not properly parent her children.
Once a trial court determines that grounds exist for terminating parental rights, "the court shall determine whether terminating the parent's rights is in the juvenile's best interest." N.C. Gen. Stat. § 7B-1110 (2007). The trial court is directed to consider the age of N.M.W., the likelihood of adoption of N.M.W., whether the termination of parental rights will assist in finding a permanent plan for N.M.W., the bond between N.M.W. and Respondent, the quality of the relationship between N.M.W. and the "proposed adoptive parent, guardian, custodian, or other permanent placement," and any other relevant consideration. G.S. . 7B-1110. In the instant case, the trial court concluded that "the best interest of [N.M.W.] [would] be promoted and served by terminating the parental rights of [Respondent]." The trial court properly and thoroughly considered all of the named factors by finding, in pertinent part:
42. That the juvenile is in a foster home and the foster mother desires to adopt the juvenile if the juvenile becomes free for adoption.
43. That the juvenile visits with [Respondent] and hugs [Respondent] when the visits begin.
44. That often during visitation between the juvenile and the mother, the mother's twins are also present.
45. That the twins beat on the mother and bite her and she does not properly discipline them and prevent that behavior.
46. That on occasion, the juvenile involved in this action has followed through with the same conduct as the twins and has stopped only when the supervising social worker supervisor has told the juvenile that she will report her to the foster mother.
47. That in spite of the fact that the mother has completed parenting classes, it does not appear that she has learned to properly parent her children.
48. That the juvenile is very bonded to the foster mother and calls her "mother".
49. That the foster mother provides for the juvenile in an exceptional way.
The trial court found that Respondent would be unable to protect N.M.W. as Respondent had previously failed to protect her.
Although our Court cannot conclude that finding of fact number 32 entered by the trial court was made by clear, cogent and convincing evidence, the inclusion of the erroneous finding is harmless error. Reviewing all of the trial court's findings of fact, the trial court did not err in terminating the parental rights of Respondent.
The trial court did not abuse its discretion in concluding that the best interest of N.M.W. was to terminate Respondent's parental rights. This assignment of error is overruled. For the foregoing reasons, we affirm the trial court's termination of Respondent's parental rights.
Affirmed.
Judges McGEE and ROBERT C. HUNTER, concur.
Report per Rule 30(e).
NOTES
[1] To protect their privacy, some parties are referred to by their initials in this opinion.
[2] The language used by the trial court suggests that the Sassers were given legal custody. Legal custody "refers to the rights and obligations associated with making major decisions affecting the child's life." The term "physical custody" refers "to the rights and obligations of the person with whom the child resides." Suzanne Reynolds, Lee's North Carolina Family Law. 13.2b (5th ed. 2002). The trial court also found that the "custody of [N.M.W.] [had] not been removed from [Respondent]". The trial court may be inferring that Respondent's parental rights were not terminated during this hearing