An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-650

Filed 18 February 2026

Pender County, No. 24JT000009-700

In re: A.L.

Appeal by Respondent-Father from orders entered 14 April 2025 by Judge Melinda H. Crouch in Pender County District Court. Heard in the Court of Appeals 28 January 2026.

*Edward Eldred for Petitioner-Appellee.*

*Patricia M. Propheter for Respondent-Appellant Father.*

GRIFFIN, Judge.

Father[1] appeals from adjudication and disposition orders concerning his termination of parental rights. Father argues there was a lack of clear and convincing evidence for grounds to terminate his parental rights, and the trial court abused its discretion in its best interest determination. We disagree with Father and affirm the trial court.

## I. Factual and Procedural Background

---

[1] Mother is not involved in this appeal.

Austin,[2] Father's son, was born in Tennessee on 8 September 2018. Father was incarcerated at the time of Austin's birth. Father was released in early 2019, but returned to jail in August 2020. From 2019 to 2020, when Father was at liberty, Austin visited Father at least every weekend. Additionally, when Father initially returned to prison, Austin's Mother and Father's sister provided Father with updates on Austin.

When Austin was almost two years old, the Tennessee Department of Children Services ("TDCS") received information alleging Austin's exposure to drugs from his Mother. After the initial report, TDCS visited Mother several times over multiple weeks. During this time, Mother continued to test positive for drug usage. Therefore, on 20 August 2020, TDCS went to Mother's home to execute an Immediate Protection Agreement for Austin, and Mother's other, newborn child.[3] Consequently, Austin was removed from Mother's care and placed with his maternal grandmother, Kristine Suerstedt, and her husband, John Suerstedt.

A few days later, TDCS filed a petition, concerning Mother, for dependency and neglect and temporary custody with a relative. In this petition, there were no allegations of Father's abandonment, dependency, or neglect. Instead, the petition only requested Father to present himself to court to address possible barriers for his reunification with Austin.

---

[2] We use a pseudonym to protect the minor child's identity. *See* N.C. R. App. P. 42.
[3] Father is not the biological parent of Mother's younger child.

On 30 October 2020, Mother and Father agreed for Austin to stay with the Suerstedts, who were awarded custody by the court. Less than a month later, at a review hearing, the court found Father in cooperation with TDCS. However, Mother failed to appear, and the court determined Mother had been uncooperative. Consequently, the court returned the case to the normal non-custodial docket.

Almost two years after the Suerstedts were awarded custody, the court determined the couple could no longer provide proper care for Austin due to their health issues. Thus, the court granted custody of Austin to Kenneth Licata, Austin's maternal grandfather, and his wife, Catherine Licata. The Licatas live in North Carolina. Father was not present at this hearing, and his name did not appear in the disposition order. Father was still incarcerated at the time of this disposition hearing.

When Austin moved to North Carolina to live with the Licatas, communication between Father and Austin basically ceased. Mr. Licata blocked Austin's paternal grandmother from calling, as a recommendation from Austin's counselor, as the calls were upsetting Austin. Prior to the blocking, Father had received updates on Austin from Austin's paternal grandmother.

On 6 February 2024, Mr. Licata (hereafter, "Petitioner") filed a petition to terminate Father's parental rights. Petitioner alleged Father neglected Austin and is incapable of providing Austin with proper care. On 14 April 2025, the trial court filed a pre-adjudication order, an adjudication order, and a disposition order. In the

adjudication order, the trial court determined three grounds existed for the termination of parental rights: neglect, abandonment, and dependency. Moreover, in the disposition order, the trial court found it was in Austin's best interest to terminate Father's parental rights. Father timely appeals both orders.

## II.    Analysis

Father contends there was a lack of clear and convincing evidence to support the ground for termination of parental rights, and the trial court abused its discretion in its best interest determination.

"A termination of parental rights proceeding consists of an adjudicatory stage and a dispositional stage." *Matter of A.L.A.*, 379 N.C. 383, 386, 866 S.E.2d 733, 737 (2021) (citation omitted). At adjudication, where a trial court determines whether a ground for parental rights termination exists, a petitioner has the burden to prove the existence of one or more grounds for such termination by "clear, cogent, and convincing evidence." *Matter of S.R.*, 384 N.C. 516, 520, 886 S.E.2d 166, 171 (2023) (citation omitted). We review a trial court's adjudication to determine whether such evidence supports the findings and "'the findings support the conclusions of law.'" *Matter of L.C.*, 387 N.C. 475, 479–80, 915 S.E.2d 106, 110 (2025) (citation omitted). Unchallenged findings of fact are "'deemed supported by competent evidence and are binding on appeal.'" *Matter of D.D.M.*, 380 N.C. 716, 720, 869 S.E.2d 693, 696 (2022) (citation omitted). Furthermore, even if there is contrary record evidence, a finding of fact supported by clear, cogent, and convincing evidence is deemed conclusive on

appeal. *Matter of B.R.L.*, 381 N.C. 56, 58, 871 S.E.2d 491, 493 (2022). This Court solely reviews the findings necessary to support a trial court's adjudicatory determination. *Id.* (citation omitted).

Additionally, appellate courts review a trial court's conclusions of law de novo. *D.D.M.*, 380 N.C. at 720, 869 S.E.2d at 696. Moreover, we will treat a finding of fact that is essentially a conclusion of law as a conclusion of law. *In re M.R.D.C.*, 166 N.C. App. 693, 697, 603 S.E.2d 890, 893 (2004).

Although multiple grounds exist for the termination of parental rights, only one ground is necessary for a court to terminate such rights. N.C. Gen. Stat. § 7B-1111(a) (2023). One ground exists when a parent willfully abandons a minor for a minimum of six consecutive months directly preceding the filing of the termination of parental rights petition. N.C. Gen. Stat. § 7B-1111(a)(7). The "determinative period for adjudicating willful abandonment is the six consecutive months preceding the filing of the petition," but a trial court may also consider a parent's conduct beyond that period. *In re B.R.L.*, 379 N.C. 15, 18, 863 S.E.2d 763, 767 (2021) (citation modified).

"'Abandonment implies conduct on the part of the parent which manifests a willful determination to forego all parental duties and relinquish all parental claims to the child.'" *In re Young*, 346 N.C. 244, 251, 485 S.E.2d 612, 617 (1997) (citation omitted). The trial court should consider a parent's financial and emotional support. *In re McLemore*, 139 N.C. App. 426, 429, 533 S.E.2d 508, 510 (2000). "If a parent

withholds his presence, his love, his care, the opportunity to display filial affection, and willfully neglects to lend support and maintenance, such parent relinquishes all parental claims and abandons the child." *In re L.M.M.*, 379 N.C. 431, 434, 866 S.E.2d 453, 458 (2021) (citation modified).

Although incarceration alone cannot be a sword in a termination of parental rights determination, it also "does not preclude a finding of the ground of willful abandonment" during the determinative six-month period. *In re D.R.W.*, 298 N.C. App. 18, 24, 913 S.E.2d 259, 264 (2025) (citation omitted). Even though a parent may have limited opportunities for showing affection while incarcerated, a parent is not excused from demonstrating interest in their child's welfare. *Id.* (citation omitted).

After a trial court has determined one or more grounds exist for the termination of parental rights, the trial court then considers, in the dispositional phase, whether the termination of parental rights is in the child's best interest. *Matter of D.L.W.*, 368 N.C. 835, 842, 788 S.E.2d 162, 167 (2016) (citation omitted). "The trial court's dispositional findings are binding on appeal if supported by any competent evidence." *In re J.S.*, 374 N.C. 811, 822, 845 S.E.2d 66, 75 (2020) (citation omitted). Furthermore, appellate courts are "bound by all uncontested dispositional findings." *In re E.F.*, 375 N.C. 88, 91, 846 S.E.2d 630, 632 (2020) (citation omitted). This Court reviews the dispositional stage for abuse of discretion. *Id.* There is an abuse of discretion when a court's determination is "'manifestly unsupported by

reason or is so arbitrary that it could not have been the result of a reasoned decision.'"
*In re C.J.H.*, 240 N.C. App. 489, 492–93, 772 S.E.2d 82, 86 (2015) (citation omitted).

Here, in adjudication, the trial court found three grounds for the termination of Father's parental rights: abandonment, neglect, and dependency. We first analyze whether there is clear, cogent, and convincing evidence to support the trial court's findings for the ground of abandonment. Father only challenges three findings of fact. Specifically, Father challenges Findings of Fact 28, 30, and 31:

> 28. That grounds exist pursuant to [N.C. Gen. Stat. § ]7B-1111(a)(1) in that [Father] continued to neglect the child prior to his most recent incarceration, had no contact with the minor child, exhibited no care, love or support for the minor child, and presently neglects the minor child.
>
> . . .
>
> 30. That grounds exist pursuant to [N.C. Gen. Stat. § ]7B-1111(a)(6) in that [Father] is clearly unable to provide proper care and supervision of this child, and the parent lacks an appropriate alternative childcare arrangement; and there is a reasonable probability that this incapability will continue for the foreseeable future.
>
> 31. That grounds exist pursuant to [N.C. Gen. Stat. § ]7B-1111(a)(7) in that [Father] has not had any contact since 2018 and when [Father] last contacted [] Petitioner after the filing of the petition, he did not inquire about the minor child nor that he wanted to play an active role in the child's life. [Father] has willfully foregone all parental duties and all parental claims to the child, and at no point reasserted himself in the child's life, when [Father] was incarcerated or when he was released, thereby the [c]ourt finds [Father] to have willfully abandoned the minor child for at least six months prior to the filing of this action.

However, these findings of facts are essentially conclusions of law, so we treat them as such. *M.R.D.C.*, 166 N.C. App. at 697, 603 S.E.2d at 893. Nevertheless, as this Court only needs to review findings necessary to support a trial court's adjudicatory determination, we first analyze the unchallenged findings of fact, deemed supported by evidence and binding on appeal. These binding findings include:

> 14. That [Father] had limited and inconsistent contact with the minor child.
>
> 15. That [] Petitioner has not had any communication with [Father], nor has [Father] tried to reassert himself as a parental role in the minor child's life since 2021.
>
> 16. That [Father] has not provided consistent financial support, of any sort, to [] Petitioner or the minor child.
>
> 17. That [Father] has not provided for the emotional, physical or mental well-being of the minor child while the minor child has been in the custody of [] Petitioner and his Wife.
>
> . . .
>
> 19. That the minor child has lived continuously with [] Petitioner and his wife since 2022.
>
> 20. That since custody was granted to [] Petitioner and his wife [Father] never sought to modify the Tennessee custody order.
>
> 21. That [Father] has not seen the child in excess of three (3) years.
>
> 22. That [Father] failed to remain in consistent contact [with] the minor child apart from mailing two cards to the home of [] Petitioner and phone calls initiated by the

biological mother prior to [] Petitioner and his wife having custody of the minor child.

23. That [Father] had the contact information for [] Petitioner. [Father] had consistent contact with the biological mother and common relatives who had the contact information.

24. That [] Petitioner and his wife were awarded custody of the minor child, and [Father] has for period of one year or more next preceding the filing of this Petition has willfully failed without justification to pay for the care, support, and education of the minor child.

25. That [Father] has willfully abandoned the minor child for more than twelve (12) months next preceding the filing of this petition.

26. That the conduct of [Father] has been such to demonstrate that he has knowingly and voluntarily waived his constitutionally protected privilege of parentage over the minor child.

The petition was filed on 6 February 2024. Thus, the critical period in reviewing willful abandonment is 6 August 2023 to 6 February 2024. Father points to allegedly contrary evidence from the time of his liberty from 2019 to 2020. However, the determinative period does not encompass 2019 to 2020. Even if the trial court considered Father's conduct during his liberty, contrary evidence does not undermine findings supported by clear, cogent, and convincing evidence.

Finding of Fact 15 states Father has not directly communicated with Austin since 2021, which includes the relevant six-month period. Finding of Fact 14 maintains Father and Austin have had limited and inconsistent communication. Even though Father has limited options in communicating with Austin from prison,

he is still expected to demonstrate interest in Austin's welfare. In the determinative period, Father only sent Austin a single card. Father sent an additional birthday card to Austin outside the decisive period, after the petition filing. We acknowledge that a parent's incarceration is not a sword in a termination of parental rights determination, but it is not a shield either. *D.R.W.*, 298 N.C. App. at 24, 913 S.E.2d at 264 (citation omitted). Additionally, Father had access to Petitioner's contact information, as stated in Finding of Fact 23. These findings demonstrate Father withheld his love, care, and opportunity to display filial affection.

Finding of Fact 24 states Father has not financially assisted in Austin's care, support, and education for the relevant period. Furthermore, Finding of Fact 16 asserts Father did not provide *any* sort of consistent financial support. These findings demonstrate with clear, cogent, and convincing evidence that Father willfully failed to lend financial support and maintenance to Austin.

As indicated by Findings of Fact 17, 19, and 21, Father failed to provide for Austin's emotional, physical, or mental well-being during the applicable period, since Austin has been in the care of Petitioner. These findings show Father withheld his love and failed to provide Austin with emotional support.

In consideration of the unchallenged findings, we hold the trial court's willful abandonment determination is supported by clear, cogent, and convincing evidence. As only one ground is required for adjudication, we do not need to review the trial court's additional grounds.

Father also contends the trial court erred in its best interest determination because he alleges some of the trial court findings are contrary to evidence. Specifically, Father argues the following dispositional findings of fact are contrary to the evidence:

> 20(a)(i) The minor child is six years old, has no recollection of [Father];
>
> . . .
>
> 20(d)(i) There is no bond between [Father] and the minor child.
>
> 20(d)(ii) The minor child would not know his legal/biological father if he saw him.

However, Father's argument again rests upon allegedly contrary evidence between 2019 and 2020, the period when Father was at liberty. While Austin may have known Father during this time, it does not necessarily follow that Austin would remember Father multiple years later, especially considering Austin's very young age when Father was at liberty. Considering Petitioner's testimony that Austin would not recognize Father if he saw him, the dispositional Findings of Fact 20(a), 20(d)(i), and 20(d)(ii) are supported by competent evidence. Thus, these findings are binding on appeal.

Additionally, we are bound by the remaining uncontested dispositional findings of fact including findings that Petitioner and Austin have a parent-child

bond, Petitioner loves and treats Austin as his own, Petitioner provides for Austin, and Petitioner has raised Austin since 2022.

Father fails to demonstrate that the trial court's decision is "manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *C.J.H.*, 240 N.C. App. at 492–93, 772 S.E.2d at 86. Therefore, we hold the trial court did not abuse its discretion.

### III.    Conclusion

Clear, cogent, and convincing evidence supports the trial court's finding of a ground of willful abandonment. Additionally, the trial court did not abuse its discretion in its best interest determination. Therefore, we affirm the trial court.

AFFIRMED.

Judges HAMPSON and GORE concur.

Report per Rule 30(e).