IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-855

Filed 3 June 2026

Orange County, Nos. 23JA000092-670, 23JA000093-670, 23JA000094-670

IN THE MATTER OF:

J.E.S., P.K.S., P.E.S.

Appeal by Respondent Mother from permanency planning order entered 25 June 2024 and termination of parental rights orders entered 3 June 2025 by Judge Sherri T. Murrell in Orange County District Court. Heard in the Court of Appeals 20 May 2026.

> *Stephenson & Fleming, LLP, by Deana K. Fleming, for Petitioner-Appellee Orange County Department of Social Services.*
>
> *Michelle FormyDuval Lynch for Appellee Guardian ad Litem.*
>
> *Hooks Law, P.C., by Laura G. Hooks, for Respondent-Appellant Mother.*

COLLINS, Judge.

Mother appeals from the trial court's permanency planning order ceasing reunification efforts with her children, Josh, Prince, and Paul,[1] and from the trial court's orders terminating her parental rights to them. We affirm.

---

[1] We use pseudonyms to protect the identities of the minor children.

## I.    Background

At the time of the termination of parental rights hearing in this case, Mother had eight children and was pregnant with her ninth child.  Mother's parental rights have been terminated as to seven of her children, three of whom are the subject of this appeal — Josh, age three, and twins Prince and Paul, age two.

Mother has an extensive history with child protective services ("CPS") in North Carolina and Georgia.  While living in Georgia in 2018, one of her children died at fourteen weeks old from nonaccidental injuries of blunt force trauma.  Mother was convicted of felony aggravated battery as a result.  She received a twenty-year sentence, served two years, and is on probation for the remainder of her sentence.

Josh was born in October 2022.  Mother entered into a case plan with Orange County DSS in December 2022 to address mental health, parenting, and housing concerns.  Orange County DSS received two CPS reports in early 2023. The first alleged Josh had been left unattended and locked in Mother's shelter room while she went shopping.  The second alleged he was unrestrained in a vehicle with his father following an argument at a gas station between Mother and father.[2]

Prince and Paul were born prematurely in August 2023 and spent time in the neonatal intensive care unit.  In November 2023, Orange County DSS received two CPS reports alleging Mother crossed the center line while driving with all three

---

[2] Josh's father is not a party to this appeal.

children in the car and collided head on with another vehicle. The accident occurred around one in the morning. There were no appropriate seats for any of the children in the car at the time of the accident. Josh was wearing a seatbelt, Prince was unrestrained, and Paul was in Mother's lap when the airbag deployed. At the hospital, both Mother and Prince tested positive for THC, and Prince was hypothermic because he was only wearing a onesie despite the cold weather. Both Prince and Paul sustained traumatic brain injuries and skull fractures as a result of the accident; Josh was unharmed. Neither of the twins were vaccinated and both had missed child wellness checks despite their prematurity.

Orange County DSS filed juvenile petitions and obtained custody of all three children in November 2023. Child medical evaluations of each child indicated concerns for future maltreatment by Mother.

During February and April 2024, Mother completed a psychological evaluation and a parenting capacity evaluation. The evaluator diagnosed her with personality disorder with paranoid and antisocial features, antisocial personality disorder, paranoid personality disorder, post-traumatic stress disorder, and borderline intellectual functioning with a full scale IQ of 71. The examiner concluded that Mother's personality disorders coupled with her cognitive functioning require that she has "only fully supervised time with her children with a 100% present, competent adult who can closely monitor her with the children."

During her involvement with Orange County DSS, Mother engaged in individual therapy, acquired independent housing, completed a parenting class, worked with a parenting aide, and held various jobs. However, Mother failed to engage with other parts of her case plan, including medication management and psychiatric evaluation to assess for medication.

The trial court entered a permanency planning order that ceased reunification efforts with Mother and the three children in June 2024 and made the primary permanency plan as to all three children adoption with a secondary plan of reunification with their father. Motions to terminate Mother's parental rights to each child were filed in August 2024. After a bench trial in June 2025, the trial court terminated Mother's parental rights to Josh on grounds of neglect and previous involuntary termination of parental rights, and to Prince and Paul on grounds of neglect, previous involuntary termination of parental rights, and dependency.

Mother timely appealed.

## II. Discussion

### A. Order Ceasing Reunification Efforts

Mother first argues that the trial court erred by ceasing reunification efforts with her as to all three children in its June 2024 permanency planning order because its findings of fact are not supported by the evidence and thus do not support its conclusions of law.

"This Court reviews an order that ceases reunification efforts to determine

whether the trial court made appropriate findings, whether the findings are based upon credible evidence, whether the findings of fact support the trial court's conclusions, and whether the trial court abused its discretion with respect to disposition." *In re C.M.*, 273 N.C. App. 427, 429 (2020) (citation omitted). "The trial court's findings of fact are conclusive on appeal if supported by any competent evidence." *In re J.H.*, 373 N.C. 264, 267 (2020) (citation omitted). If a finding of fact is essentially a conclusion of law, it will be treated as a conclusion of law and reviewed de novo on appeal. *See In re M.R.D.C.*, 166 N.C. App. 693, 697 (2004). "Uncontested findings are binding on appeal." *In re A.P.W.*, 378 N.C. 405, 410 (2021). "An abuse of discretion occurs when the trial court's ruling is so arbitrary that it could not have been the result of a reasoned decision." *Id.* (citation omitted).

At a permanency planning hearing, "[r]eunification shall be the primary or secondary plan unless, . . . the court makes written findings that reunification efforts clearly would be unsuccessful or would be inconsistent with the juvenile's health or safety." N.C. Gen. Stat. § 7B-906.2(b) (2024). The trial court must make written findings of fact as to each of the following to demonstrate that reunification efforts would be unsuccessful:

> (1) Whether the parent is making adequate progress within a reasonable period of time under the plan.
>
> (2) Whether the parent is actively participating in or cooperating with the plan, the department, and the guardian ad litem for the juvenile.

(3) Whether the parent remains available to the court, the department, and the guardian ad litem for the juvenile.

(4) Whether the parent is acting in a manner inconsistent with the health or safety of the juvenile.

*Id.* § 7B-906.2(d) (2024).

Mother specifically challenges the following findings of fact in the permanency planning order ceasing reunification efforts:

> vi. The twins have severe traumatic brain injuries that may have life-long negative impact. They require a significant amount of supervision and care which Respondent mother has not demonstrated despite redirection.
>
> vii. [Josh] is a young toddler who require[s] supervision in [] his actions, Respondent mother has failed [to] ensure he does not consume choking hazards despite redirection.
>
> . . . .
>
> 12. Pursuant to N.C.G.S. § 7B-906.2(d) the following demonstrate degree of success or a lack of toward reunification:
>
> a. Respondent mother is not making adequate progress within a reasonable period of time under the plan. While Respondent mother has engaged in reunification services and attended visits, her pattern of maltreatment and lack of insight negatively impact her progress.
>
> . . . .
>
> d. Respondent mother is acting in a manner inconsistent with the health or safety of the juveniles. She has not demonstrated understanding

- 6 -

> the reasons for care despite working with a parent
> aid [and] continues to place the juveniles at risk
> during visits.

The record evidence supports the challenged findings: Mother's psychological evaluation and parenting capacity evaluation concluded that Mother has an "inability to show insight or accept responsibility for what happened to the children and the significant injuries they suffered"; Mother has an extensive history with child protective services; a social worker testified that Mother's mood regulation and parenting skills are inconsistent; and Mother has failed to engage in medication management and psychiatric evaluation to assess for medication.  Thus, the challenged findings are supported by competent evidence.

Mother further argues that the following findings of fact in the permanency planning order are instead conclusions of law, and that they are unsupported by the findings of fact:

> d. Efforts to reunite the juveniles with Respondent
> mother would be unsuccessful or inconsistent with
> the juveniles' health or safety and need for a safe,
> permanent home within a reasonable period of time.
> To support this ultimate finding of fact, the Court
> finds as follows:
>
> . . . .
>
> 11. The Court finds, pursuant to N.C.G.S. § 7B-906.1(e),
> that the following criteria are relevant:
>
> . . . .
>
> d. The parents have acted inconsistently with their
> protected status as parents.

- 7 -

. . . .

> 13. The best plan of care to achieve a safe, permanent home for the juveniles within a reasonable period of time is a primary plan of adoption and a secondary plan of reunification with Respondent father. These concurrent plans are in the juveniles' best interest under N.C.G.S. § 7B-906.2(a).

Whether these statements are ultimate findings of fact[3] or conclusions of law, they are supported by the trial court's findings of fact. Thus, the trial court did not err by making these conclusions and made the required findings to cease reunification efforts with Mother as to all three children.

## B. Orders Terminating Parental Rights

Mother next argues that the trial court erred by concluding that she neglected Josh and the twins, she lacked the ability or willingness to establish a safe home for all three children, and the twins were dependent. We need not reach the latter two arguments because there is competent evidence in the record to support termination of Mother's parental rights to all three children on the ground of neglect.

This Court reviews "only those findings necessary to support the trial court's determination that grounds existed to terminate" a parent's rights, and unchallenged findings are "deemed supported by competent evidence and are binding on appeal." *In re T.N.H.*, 372 N.C. 403, 407 (2019) (citations omitted). The trial court's

---

[3] "[A]n ultimate finding is a finding supported by other evidentiary facts reached by natural reasoning[,]" while "any determination requiring the exercise of judgement or the application of legal principles is more properly classified as a conclusion of law." *In re X.I.F.,* 297 N.C. App. 799, 810 (2025) (citations omitted).

conclusions of law are reviewed de novo. *In re C.B.C.*, 373 N.C. 16, 19 (2019).

Pursuant to N.C. Gen. Stat. § 7B-1111(a)(1), the trial court may terminate a parent's parental rights upon finding that "[t]he parent has . . . neglected the juvenile[,]" as defined in N.C. Gen. Stat. § 7B-101. N.C. Gen. Stat. § 7B-1111(a)(1) (2025). In relevant part, a neglected juvenile is defined as one whose parent "[d]oes not provide proper care, supervision, or discipline[,]" "[h]as not provided or arranged for the provision of necessary medical or remedial care[,]" or "[c]reates or allows to be created a living environment that is injurious to the juvenile's welfare." *Id.* § 7B-101(15)(a), (c), (e) (2025). Furthermore, "[i]n determining whether a juvenile is a neglected juvenile, it is relevant whether that juvenile lives in a home where another juvenile has died as a result of suspected abuse or neglect or lives in a home where another juvenile has been subjected to abuse or neglect by an adult who regularly lives in the home." *Id.* § 7B-101(15) (2025).

Mother challenges the following findings of fact[4] in the June 2025 termination of parental rights orders to support her argument that the trial court erred by concluding she neglected Josh, Prince, and Paul because the evidence was insufficient to support finding a likelihood of future neglect:

> 26. [Josh] was impaired and at a substantial risk of physical, mental, and/or emotional impairment due to Respondent mother's neglect. To support this ultimate

---

[4] The trial court entered a separate termination of parental rights order for each child. The challenged findings of fact exist in each order but are assigned different numbers. The quoted findings and numbers are from the termination order pertaining to Josh.

finding the Court specifically finds the following facts:

. . . .

27. It is likely that the neglect experienced by the juvenile in the care of Respondent mother will repeat or continue if the juvenile is returned to Respondent mother's care and custody. Specifically, this court finds the following facts:

> . . . .

> f. There is concern regarding Respondent mother's drug use, specifically marijuana, which impairs her judgment regarding appropriate supervision:

> > . . . .

> g. Respondent mother is not capable of safely parenting the juveniles due to her mental health diagnoses, intellectual functioning, CPS history, and criminal history and [will] subject the juveniles to further maltreatment if in her care.

> > . . . .

> > v. A significant predictor of Respondent mother's future behavior as it relates to parenting is her past behavior, specifically prior terminations of parental rights, felony assault of a child resulting in death, the motor vehicle accident with the juveniles unrestrained, and lack of appropriate supervision.

There is competent evidence in the record to support each of the challenged findings. Even assuming arguendo that the challenged findings are unsupported, the trial court's unchallenged findings of fact support its conclusion that there is a likelihood of future neglect of Josh, Prince, and Paul. Thus, the trial court did not err

by terminating Mother's parental rights as to each child on the ground of neglect.

## III.    Conclusion

For the reasons set forth above, we affirm the trial court's permanency planning order and termination of parental rights orders.

AFFIRMED.

Judges WOOD and FLOOD concur.